PARIENTE, J.,
concurring in part and dissenting in part.
Although I concur in the approval of the majority of the proposed amendments, I dissent from the Court’s approval of the amendment to Florida Bar Rule of Professional Conduct 4 — 1.9(b), which governs conflicts of interest, because the amendment adds a definition of “generally known” that in my view is overly broad.
Rule 4-1.9, as currently written, allows an attorney to use information against a former client that would disadvantage the client only if the information is “generally known.” However, the term “generally known” is undefined in the current rule.
The proposed amendment defines “generally known” as “information of the type that a reasonably prudent lawyer would obtain from public records or through authorized processes for discovery of evidence.” I conclude that this definition of the tenn “generally known” is too broad and is contrary to the intent of the conflict of interest rule, which is to permit a lawyer to use information to the disadvantage of the former client only under very narrow circumstances.
The goal of any definition of “generally known” should be to clarify that a lawyer does not violate the duty of confidentiality by later using to a former client’s disadvantage information that relates to the prior representation but nevertheless would be known to or learned by a competent lawyer who has not previously represented that former client. I am concerned that the use of the term “reasonably prudent lawyer” without the caveat “who has not previously represented the former client” is too expansive.
Simply because information could be found somewhere in the public record or through “authorized processes of discovery” does not mean that all lawyers would be equally able to discover the information. The lawyer must know where to look and what to look for. The problem creating an appearance of impropriety for conflict of interest purposes arises when that specific knowledge of where and what to look for may have been derived from the prior representation of that client.
As Judge Warner stated:
We ourselves have substantial concerns as to the ethics of defense counsel’s attacks on his former client. See R. Regulating Fla. Bar 4-1.6, 4-1.9. While defense counsel claimed that anything in a public document can be revealed, even against a former client, the rule states that an attorney may not use information relating to the representation of a former client to the disadvantage of that client except as rule 4-1.6 would permit with respect to a client or “when the information has become generally known.” R. Regulating Fla. Bar 4-1.9(b). We are not prepared to state that all information contained in any public document is “generally known” within the meaning of the rule.
King v. Byrd, 716 So.2d 831, 835 (Fla. 4th DCA 1998) (emphasis supplied). Therefore, because in my opinion the definition of “generally known” is not narrowly drawn, I would reject the proposed definition of “generally known.”
QUINCE, J., concurs.
APPENDIX
RULE 1-3.2 MEMBERSHIP CLASSIFICATIONS
(a) Members in Good Standing. Members of The Florida Bar in good *215 standing shall mean only those persons licensed to practice law in Florida who have paid annual membership fees or dues for the current year and who are not retired, resigned, delinquent, inactive, or suspended members.
(b) Conditionally Admitted Members. The Supreme Court of Florida may admit a person with a prior history of drug, alcohol, or psychological problems to membership in The Florida Bar and impose conditions of probation as the court deems appropriate upon that member. The period of probation shall be no longer than 5 years, or for such indefinite period of time as the court may deem appropriate by conditions in its order. The conditions may include, but not be limited to, participation in a rehabilitation program, periodic blood and urine analysis, periodic psychological examinations, or supervision by another member of The Florida Bar. The probation shall be monitored by The Florida Bar and the costs thereof shall be paid by the member on probation. A failure to observe the conditions of probation or a finding of probable cause as to conduct of the member committed during the period of probation may terminate the probation and subject the member to all available grievance procedur-es-under the Rules of Pisciplinedisciplinary sanctions. Proceedings to determine compliance with conditions of admission shall be processed in the same manner as matters of contempt provided elsewhere in these Rules Regulating The Florida Bar. If necessary, the court may assign a judicial referee to take testimony, receive evidence, and make findings of fact in the manner prescribed in the rule concerning procedures before a referee. The findings of the referee may be appealed as provided in the rule for procedures before the supreme court.
(c) Inactive Members. Inactive members of The Florida Bar shall mean only those members who have properly elected to be classified as inactive in the manner elsewhere provided.
Inactive members shall:
(1) pay annual membership fees as set forth in rule 1-7.3;
(2) be exempt from continuing legal education requirements;
(3) affirmatively represent their membership status as inactive members of The Florida Bar when any statement of Florida Bar membership is made;
(4) not hold themselves out as being able to practice law in Florida or render advice on matters of Florida law;
(5) not hold any position that requires the person to be a licensed Florida attorney;
(6) not be eligible for certification under the Florida certification plan;
(7) not vote in Florida Bar elections or be counted for purposes of apportionment of the board of governors;
(8) certify upon election of inactive status that they will comply with all applicable restrictions and limitations imposed on inactive members of The Florida Bar.
Failure of an inactive member to comply with all requirements thereof shall be cause for disciplinary action.
An inactive member may, at any time, apply for reinstatement to membership in good standing in the manner provided in rule 1-3.7.
BYLAW 2-9.3 LEGISLATIVE POLICIES
(a) Adoption of Rules of Procedure and Legislative Positions. The board of governors shall adopt and may repeal or amend rules of procedure governing the legislative activities of The Florida Bar in the same manner as provided in bylaw 2- *216 9.2; provided, however, that the adoption of any legislative position shall require the affirmative vote of two-thirds of those present and voting at any regular meeting of the board of governors or two-thirds of the executive committee or by the president, as provided in the rules of procedure governing legislative activities.
(b) Publication of Legislative Positions. The Florida Bar shall publish notice of adoption of legislative positions in The Florida Bar News, in the issue immediately following the board meeting at which the positions were adopted..
(c) Objection to Legislative Positions of The Florida Bar.
(1) Any member in good standing of The Florida Bar may, within 45 days of the date of publication of notice of adoption of a legislative position, file with the executive director a written objection to a particular position on a legislative issue. The identity of an objecting member shall be confidential unless made public by The Florida Bar or any arbitration panel constituted under these rules upon specific request or waiver of the objecting member. Failure to object within this time period shall constitute a waiver of any right to object to the particular legislative issue.
(2) After a written objection has been received, the executive director shall promptly determine the pro rata amount of the objecting member’s membership fees at issue and such amount shall be placed in escrow pending determination of the merits of the objection. The escrow figure shall be independently verified by a certified public accountant.
(3) Upon the deadline for receipt of written objections, the board of governors shall have 45 days in which to decide whether to give a pro rata refund to the objecting member(s) or to refer the action to arbitration.
(4)In the event the board of governors orders a refund, the objecting member’s right to the refund shall immediately vest although the pro rata amount of the objecting member’s membership fees at issue shall remain in escrow for the duration of the fiscal year and until the conclusion of •The Florida Bar’s annual audit as provided in bylaw 2-6.16, which shall include final independent verification of the appropriate refund payable. The Florida Bar shall thereafter pay the refund within 30 days of independent verification of the amount of refund, together with interest calculated at the statutory rate of interest on judgments as of the date the objecting member’s membership fees at issue were received by The Florida Bar, for the period commencing with such date of receipt of the membership fees and ending on the date of payment of the refund by The Florida Bar.
(d) Composition of Arbitration Panel. Objections to legislative positions of The Florida Bar may be referred by the board of governors to an arbitration panel comprised of 3 members of The Florida Bar, to be constituted as soon as practicable following the decision by the board of governors that a matter shall be referred to arbitration.
The objecting member shall be allowed to choose 1 member of the arbitration panel, The Florida Bar shall appoint the second panel member, and those 2 members shall choose a third member of the panel who shall serve as chair. In the event the 2 members of the panel are unable to agree on a third member, the chief judge of the Second Judicial Circuit of Florida shall appoint the third member of the panel.
(e) Procedures for Arbitration Panel.
*217 (1) Upon a decision by the board of governors that the matter shall be referred to arbitration, The Florida Bar shall promptly prepare a written response to the objection and serve a copy on the objecting member. Such response and objection shall be forwarded to the arbitration panel as soon as the panel is properly constituted. Venue for any arbitration proceedings conducted pursuant to this rule shall be in Leon County, Florida; however, for the convenience of the parties or witnesses or in the interest of justice, the proceedings may be transferred upon a majority vote of the arbitration panel. The chair of the arbitration panel shall determine the time, date, and place of any proceeding and shall provide notice thereof to all parties. The arbitration panel shall thereafter confer and decide whether The Florida Bar proved by the greater weight of evidence that the legislative matters at issue are constitutionally appropriate for funding from mandatory Florida Bar membership fees.
(2) The scope of the arbitration panel’s review shall be to determine solely whether the legislative matters at issue are within those acceptable activities for which compulsory membership fees may be used under applicable constitutional law.
(3) The proceedings of the arbitration panel shall be informal in nature and shall not be bound by the rules of evidence. If requested by an objecting member who is a party to the proceedings, that party and counsel, and any witnesses, may participate telephonically, the expense of which shall be advanced by the requesting party. The decision of the arbitration panel shall be binding as to the objecting member and The Florida Bar. If the arbitration panel concludes the legislative matters at issue are appropriately funded from mandatory membership fees, there shall be no refund and The Florida Bar shall be free to expend the objecting member’s pro rata amount of membership fees held in escrow. If the arbitration panel determines the legislative matters at issue are inappropriately funded from mandatory membership fees, the panel shall order a refund of the pro rata amount of membership fees to the objecting member.
(4) The arbitration panel shall thereafter render a final written report to the objecting member and the board of governors within 45 days of its constitution.
(5) In the event the arbitration panel orders a refund, the objecting member’s right to the refund shall immediately vest although the pro rata amount of the objecting member’s membership fees at issue shall remain in escrow until paid. Within 30 days of independent verification of the amount of refund, The Florida Bar shall provide such refund together with interest calculated at the statutory rate of interest on judgments as of the date the objecting member’s membership fees at issue were received by The Florida Bar, for the period commencing with such date of receipt of the membership fees and ending on the date of payment of the refund by The Florida Bar.
(6) Each arbitrator shall be compensated at an hourly rate equal to that of a circuit court judge based on services performed as an arbitrator pursuant to this rule.
(7) The arbitration panel shall tax all legal costs and charges of any arbitration proceeding conducted pursuant to this rule, to include arbitrator expenses and compensation, in favor of the prevailing party and against the nonprevailing party. When there is more than one party on one or both sides of an action, the arbitration panel shall tax such costs and charges against nonprevaihng parties as it may deem equitable and fair.
*218 (8) Payment by The Florida Bar of the costs of any arbitration proceeding conducted pursuant to this bylaw, net of costs taxed and collected, shall not be considered to be an expense for legislative activities, in calculating the amount of membership fees refunded pursuant to this bylaw.
RULE 3-2.1 GENERALLY
Wherever used in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Bar Counsel. A member of The Florida Bar representing The Florida Bar in any proceeding under these rules. Any staff counsel of-The Florida Bar may serve as bar counsel-or assistant bar counsel in a particular ■■ease.
(b) The Board or the Board of Governors. The board of governors of The Florida Bar.
(c) Complainant or Complaining Witness. Any person who has complained of the conduct of any member of The Florida Bar to any officer or agency of The Florida Bar.
(d) This Court or the Court. The Supreme Court of Florida.
(e) Court of this State. A state court authorized and established by the constitution or laws of the Sstate of Florida.
(f) Diversion to Practice and Professionalism Enhancement Programs. The removal of a disciplinary matter from the disciplinary system and placement of the matter in a skills enhancement program in lieu of a disciplinary sanction.
(g) Executive Committee. The executive committee of the board of governors of The Florida Bar.
(h) Executive Director. The executive director of The Florida Bar.
(i) Practice and Professionalism Enhancement Programs. Programs operated either as a diversion from disciplinary action or as a part of a disciplinary sanction that are intended to provide educational opportunities to members of the bar for enhancing skills and avoiding misconduct allegations.
Cj) Probable Cause. A finding by an authorized agency that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action.
(k) Referral to Practice and Professionalism Enhancement Programs. Placement of a lawyer in skills enhancement programs as a disciplinary sanction.
(l) Referee. A judge or retired judge appointed to conduct proceedings as provided under these rules.
(m) Respondent. A member of The Florida Bar or an attorney subject to these rules who is accused of misconduct or whose conduct is under investigation.
(n) Staff Counsel. The director of the legal division and Aan employee of The Florida Bar authorized under rule -3-3.3. When used in this-rule, the term may include associate or assistant staff counsel.
(o) Branch Staff Chief Branch Discipline Counsel. Braneh staff Chief branch discipline counsel are is the assistant-staff counsel in charge of a branch office of The Florida Bar. Any assistant staff counsel of employed by The Florida Bar may serve as branch staff chief branch discipline counsel at the direction of the regularly assigned branch staff chief branch discipline counsel or headquarters staff counsel. Headquarters-staff counsel are the staff -counsel assigned-to the headquarters
office-in Tallahassee.
(p) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the *219 board of governors with respect to a particular grievance committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such grievance committee. In circuits having an unequal number of grievance committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for. all pending cases from a particular committee passes' to the new designated reviewer. Staff The chief branch discipline counsel will be given written notice of changes in the designated reviewing members for a particular committee.
RULE 3-3.3 COUNSEL FOR THE FLORIDA BAR
(a) Staff-Counsel. The board may employ staff counsel and assistant staff bar counsel for The Florida Bar to perform such duties, as may be assigned, under the direction of the executive director, (b) Bar Counsel. Staff counsel may designate members of The Florida Bar to serve as bar counsel to represent The Florida Bar in disciplinary proceedings. Bar counsel shall not be a member of the board or of a' grievance committee, éxcept thát a member of the board may represent The Florida Bar on any review proceeding under rule 3-7.7. Bar counsel may be compensated in accordance with budgetary policies adopted by the board.
RULE 3-3.4 GRIEVANCE COMMITTEES
There shall be such grievance committees as are herein'provided, each of which shall have the authority and jurisdiction required to perform the functions hereinafter assigned to it and which shall be constituted and appointed as follows:
(a) Circuit Grievance Committees. There shall be at least one 1 grievance committee for each judicial circuit of this state and as many more as shall be found desirable by the board. Such committees shall be designated as judicial circuit grievance committees, and in circuits having more than ©se 1 committee they shall be identified by alphabetical designation in the order of creation. Such committees shall be continuing bodies notwithstanding changes in membership, and they shall have jurisdiction and the power to proceed in all matters properly before them.
(b) Special Grievance Committees. The board may from time to time appoint grievance committees, for the purpose of such investigations as may be assigned in accordance with these rules. Such committees shall continue only until the completion of tasks assigned, and they shall have jurisdiction and power to proceed in all matters so assigned to them. All provisions concerning grievance committees shall be applicable to special grievance committees except those concerning terms of office and other restrictions thereon as may be imposed by the board. Any vacancies occurring in such a committee shall be filled by the board, and such changes in members shall not affect the jurisdiction and power of the committee to proceed in all matters properly before it.
(c) Membership, Appointment, and Eligibility. Each grievance committee shall be appointed by the board and shall consist of not fewer than 3 members. At least one-third of the committee members shall be nonlawyers. All appointees shall be of legal age and, except for special grievance committees, shall be residents of the circuit or have their principal office in the circuit. The lawyer members of the committee shall have been members of The Florida Bar for at least 5 years.
*220 No. member of a grievance committee shall perform any grievance committee function when that member:
(1) is is related by blood or marriage to the complainant or respondent;
(2) Has has a financial, business, property, or personal interest in the matter under consideration or with the complainant or respondent;
(3) Has has a personal interest that could be affected by the outcome of the proceedings or that could affect the outcome; or
(4) is is prejudiced or biased toward either the complainant or the respondent. Upon notice of the above prohibitions the affected members should recuse themselves from further proceedings. The grievance committee chair shall have the power to disqualify any member from any proceeding in which any of the above prohibitions exist and are stated of record or in writing in the file by the chair.
(d) Terms.. The terms of the members shall be for 1 year from the date of administration of the oath of service on the grievance committee or until such time as their successors are appointed and quali-fiéd. Continuous service of a member shall not exceed 3 years. A member shall not be reappointed for a period of 3 years after the end of the member’s term; provided, however, the expiration of the term of any member shall not disqualify such member from concluding any investigation then pending before the committee.
■ (e) Officers. There shall be a chair and vice-chair designated by the designated reviewer of that committee. The chair and vice-chair shall be members of The Florida Bar.
(f) Oath. Each new member of a committee shall subscribe to an oath to fulfill the duties of the office. Such oaths shall be filed with the executive director and placed with the official records of The Florida Bar.
(g) Removal. Any member may be removed from office by the designated reviewer of that committee or the board.
(h) Grievance Committee Meetings. Grievance committees should meet at regularly scheduled times, not less frequently than quarterly each year, and either the chair or vice-chair may call special meetings. Grievance committees should meet at least monthly during any period when the committee has one 1 or more pending cases assigned for investigation and report. The time, date, and place of regular monthly meetings should be set in advance by agreement between the committee and brane-h-staff chief branch discipline counsel.
RULE 3-5.2 EMERGENCY SUSPENSION AND PROBATION
(a) Initial Pétition. On petition of The Florida Bar, authorized by its president, president-elect, or executive director, supported by 1 or more affidavits demonstrating facts personally known to the affiants that, if unrebutted, would establish clearly and convincingly that an attorney appears to be causing great public harm, the Supreme Court of Florida may issue an order imposing emergency conditions of probation on said attorney or suspending said attorney on an emergency basis.
(b) Trust Accounts. Any order of emergency suspension or probation that restricts the attorney in maintaining a trust account shall, when served on any bank or other financial institution maintaining an account against which said attorney may make withdrawals, serve as an injunction to prevent said bank or financial institution from making further payment from such account or accounts on any obli *221 gation except in accordance with restrictions imposed by the court.
(c) New Cases and Existing Clients. Any order of emergency suspension issued under this rule shall immediately preclude the attorney from accepting any new cases and unless otherwise ordered permit the attorney to continue to represent existing clients for only the first 30 days after issuance of such emergency order. Any fees paid to the suspended attorney during the 30-day period shall be deposited in a trust account from which withdrawals may be made only in accordance with restrictions imposed by the court.
(d) Filing of Formal Complaints. The Florida Bar shall file a formal complaint within 60 days of the emergency order and proceed to trial of the underlying issues, without the necessity of a finding of probable cause by either a grievance committee or the board of governors.
(e) Motions for Dissolution.
(1) The attorney may move at any time for dissolution or amendment of an emergency order by motion filed with the Supreme Court of Florida, a copy of which will be served on bar counsel. Such motion shall operate as a stay of any other proceedings and applicable time limitations in the case and, unless the motion fails to state good cause or is procedurally barred as an invalid successive motion, shall immediately be assigned to a referee designated by the chief justice. The filing of such motion shall not stay the operation of an order of emergency suspension or probation entered under this rule.
(2) The referee shall hear such motion within 7 days of assignment, or a shorter. time if practicable, and submit a report and recommendation to the Supreme Court of Florida within 7 days of the date of the hearing, or a shorter time if practicable. The referee shall recommend dissolution or amendment, whichever is appropriate, to the extent that’ bar counsel cannot demonstrate a likelihood of prevailing on the merits on any element of the underlying complaint.
(3) Successive motions for dissolution shall be summarily dismissed by the supreme court to the extent that they raise issues that were or with due diligence could have been- raised in a prior motion.
(4) Upon receipt of the referee’s recommended order on the motion for dissolution or amendment, the supreme court shall review and act upon the ■ referee’s findings and recommendations. If the court continues the order of emergency suspension or probation in any manner, The Florida Bar shall file a formal.complaint, if one has not yet been filed, within 60 days of the continuance and proceed to trial of the underlying issues, without the necessity of a finding of probable cause by either a grievance committee or the board of governors. A continuance of the emergency suspension or probation dissolves the stay of other proceedings.
(f)Hearings on Formal Complaints. Upon the filing of a formal complaint based on charges supporting an emergency order, the chief justice shall appoint a referee to hear the matter in the same manner as provided in rule 3-7.5, except that the referee shall hear the matter and issue a report and recommendation within 90 days of appointment or, if the attorney has filed an unsuccessful motion for dissolution or amendment after the appointment of the referee, within 90 days of the supreme, court’s continuance of the emergency order. This time limit shall apply only to trials on complaints in connection with which an emergency suspension is in effect. If the time limit specified in this subdivision is not met, that portion of an emergency order imposing a suspension shall be automatically dissolved, except *222 upon order of the supreme court upon showing of good cause, provided that any other. appropriate disciplinary action on the underlying conduct still may be taken.
(g) Proceedings in the Supreme Court of Florida. Consideration of the referee’s report and recommendation shall be expedited in the supreme court. If oral argument is granted, the chief justice shall schedule oral argument as soon as practicable. ■
(h) Waiver of Time Limits. Respondent may at any time waive the time requirements set forth in this rule by written request made to and approved by the referee assigned to hear the matter.
RULE 3-5.3 DIVERSION OF DISCIPLINARY CASES TO PRACTICE AND PROFESSIONALISM ENHANCEMENT PROGRAMS
(a) Authority of Board. The board of governors is hereby authorized to establish practice and professionalism enhancement programs to which eligible disciplinary cases may be diverted as an alternative to disciplinary sanction.
(b) Types of Disciplinary Cases Eligible for Diversion. Disciplinary cases that otherwise would be disposed of by a finding of minor misconduct or by a finding of no probable cause with a letter of advice are eligible for diversion to practice and professionalism enhancement programs.
(c) Limitation on Diversion. A respondent who has been the subject of a prior diversion within 7 years shall not be eligible for diversion.
(d) Approval of Diversion Recommended — by—B ar Counsel or.Grievance
Committee. The bar shall not offer a respondent the opportunity to divert a disciplinary case to a practice and professionalism enhancement program unless staff counsel, the grievance committee chair, and the designated reviewer concur.
(e) Contents of Diversion Recommendation. If a diversion recommendation is approved as provided in subdivision (d), the recommendation shall state the practice and professionalism enhancement program(s) to which the respondent shall be diverted, shall state the general purpose for the diversion, and the costs thereof to be paid by the respondent.
(f) Service of Recommendation on and Review by Respondent. If a diversion recommendation is approved as provided in subdivision (d), the recommendation shall be served on the respondent who may accept or reject a diversion recommendation in the same manner as provided for review of recommendations of minor misconduct. The respondent shall not have the right to reject any specific requirement of a practice and professionalism enhancement program.
(g) Effect of Rejection of Recommendation by Respondent. In the event that a respondent rejects a diversion recommendation the matter shall be returned for further proceedings under these rules.
(h) Diversion at Trial Level.
(1) Agreement of the Parties. A referee may recommend diversion of a disciplinary case to a practice and professionalism enhancement program if the bar approves diversion as stated in subdivision (d) and the respondent agrees. Under these circumstances a conditional plea, as otherwise authorized by these rules, may be submitted to the referee for review and approval.
(2) After Submission of Evidence. A referee may recommend diversion of a disciplinary case to a practice and professionalism enhancement program if, after submission of evidence, but before a finding of guilt, the referee determines that, if proven; the conduct alleged to have been committed by the respondent is not more serious than minor misconduct.
*223 (3) Costs of Practice and Professionalism Enhancement Program. ■ A referee’s recommendation of diversion to a practice and professionalism enhancement program shall state the costs thereof to be paid by the respondent.
(4) Appeal of Diversion Recommendation. The respondent and the bar shall have the right to appeal a referee’s recommendation of diversion, except in the case of diversion agreed to under subdivision (h)(1).
(5) Authority of Referee to Refer a Matter to a Practice and Professionalism Enhancement Program. Nothing in this rule shall preclude a referee from referring a disciplinary matter to a practice and professionalism enhancement program as a part of a disciplinary sanction.
(i) Effect of Diversion. When the recommendation of diversion becomes final, the respondent shall enter the practice and professionalism enhancement program(s) and complete the requirements thereof. Upon respondent’s entry into a practice and professionalism enhancement program, the bar shall terminate its investigation into the matter and its disciplinary files shall be closed indicating the diversion. Diversion into the practice and professionalism enhancement program shall not constitute a disciplinary sanction.
(j) Effect of Completion of the Practice and Professionalism Enhancement Program. If a respondent successfully completes all requirements of the practice and professionalism enhancement program(s) to which the respondent was diverted, the bar’s file shall remain closed.
(k) Effect of Failure to Complete the Practice and Professionalism Enhancement Program. If a respondent fails to fully complete all requirements of the practice and professionalism enhancement program(s) to which the respondent was diverted, including the payment of costs thereof, the bar may reopen its disciplinary file and conduct further proceedings under these rules. Failure to complete the practice and professionalism enhancement program shall be considered as a matter of aggravation when imposing a disciplinary sanction.
(I)Costs of Practice and Professionalism Enhancement Programs. The Florida Bar shall annually determine the costs of practice and professionalism enhancement programs and publish the amount of the costs thereof that shall be assessed against and paid by a respondent.
RULE 3-7.2 PROCEDURES UPON CRIMINAL OR PROFESSIONAL MISCONDUCT; DISCIPLINE UPON DETERMINATION OR JUDGMENT OF GUILT OF CRIMINAL MISCONDUCT
(a) Definitions.
(1) Judgment of Guilt. For the purposes of these rules, “judgment of guilt” shall include only those cases in which the trial court in the criminal proceeding enters an order adjudicating the respondent guilty of the offense(s) charged.
(2) Determination of Guilt. For the purposes of these rules, “determination of guilt” shall include only those cases in which the trial court in the criminal proceeding enters an order withholding adjudication of the respondent’s guilt of the offense(s) charged.
(3) Convicted Attorney. For the purposes of these rules, “convicted attorney” shall mean an attorney who has had either a determination or judgment of guilt entered by , the trial court in the criminal proceeding.
(b) Determination or Judgment of Guilt. Determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction upon trial of or *224 plea to any crime or offense that is a felony under the laws of this state, or under the laws under which any other court making such determination or entering such judgment exercises its jurisdiction, shall be conclusive proof of guilt .of the criminal offense(s) charged for the purposes of these rules.
(c) Notice of Determination or Judgment of Guilt. Upon the entry of a determination or judgment of guilt against a member of The Florida Bar by a court of competent jurisdiction upon trial of or plea to any offense that is a felony under the laws applicable to such court, such convicted attorney shall within 30 days of such determination or judgment notify the executive director of The Florida Bar of such determination or judgment. Notice shall include a copy of the order(s) whereby such determination or judgment was entered.
(d) Notice of Determination or Judgment of Guilt by Courts of the State of Florida. If any such determination or judgment is entered by a court of the State of Florida, the judge or clerk thereof shall transmit to the Supreme Court of Florida and the executive director of The Florida Bar a certified copy of the order(s) whereby the determination or judgment was entered.
(e) Suspension by Judgment of Guilt (Felonies). Upon receiving notice that a member of the bar has been determined or adjudicated guilty of a felony, branch staff bar counsel will file a “Notice of Determination or Judgment of Guilt” in the Supreme Court of Florida. A copy of the judgment shall be attached to the notice. Upon the filing with the Supreme Court of Florida by The Florida Bar and service upon the respondent of a notice of determination or judgment of guilt for offenses that are felonies under applicable law, the respondent shall stand suspended as a member of The Florida Bar on the eleventh day after filing of the notice of determination or judgment of guilt unless the respondent shall, on or before the tenth day after filing of such notice, file a petition to terminate or modify such suspension.
(f) Petition to Modify or Terminate Suspension.
(1) At any time after the filing of a notice of determination or judgment of guilt, the respondent may file a petition with the Supreme Court of Florida to modify or terminate such suspension and shall serve a copy thereof upon the executive director'.
(2) If such petition is filed on or before the tenth day following the filing of the notice, the suspension will be deferred until entry of an order on the petition.
(3) If such petition is filed after the tenth day following the filing of the notice of judgment of guilt, the suspension shall remain in effect pending disposition of the petition. Modification or termination of the suspension shall be granted only upon a showing of good case.
(g) Response to Petition to Modify or Terminate Automatic Suspension. The Florida Bar shall be allowed 20 days from the filing of a petition to modify or termi-naté automatic suspension to respond to .the same. Staff Bar counsel will oppose all petitions to modify or withhold an automatic suspension on a notice of determination or judgment of guilt unless the designated reviewer recommends and the executive committee concurs in not opposing such a petition.
(h) Term of Suspension.
(1) Maximum Term, of Suspension. Unless the Supreme Court of Florida permits an earlier application for reinstatement, the suspension imposed on the *225 determination or judgment of guilt shall remain in effect for 3 years and thereafter until civil rights have been restored and until the respondent is reinstated under rule 3-7.10 hereof.
(2) Continuation During Appeal. A final termination of the criminal cause resulting in the affirmance of a determination or judgment of guilt shall continue the suspension until expiration of all periods for appeal and rehearing.
(3) Continuation of Suspension Until Final Disposition. If an appeal is taken by the respondent from the determination or judgment of the trial court in the criminal proceeding, and on review the cause is remanded for further proceedings, the suspension shall remain in effect until the final disposition of the criminal cause unless modified or terminated by the Supreme Court of Florida as elsewhere provided.
(4) Termination and Exyunetion of Suspension. A final disposition of the criminal cause resulting in acquittal will terminate the suspension. Upon motion of the respondent, the Supreme Court of Florida may expunge a suspension entered under this rule when a final disposition of the criminal cause has resulted in acquittal.
(5) Effect of Exyunetion. A respondent who is the subject of a disciplinary history record that is expunged under this rule lawfully may deny or fail to acknowledge the sanctions covered by the expunged record, except when the respondent is a candidate for election or appointment to judicial office.
(i)Separate Disciplinary Action.
(1) Initiation of Action. The Florida Bar may, at any time, initiate separate disciplinary action against the respondent.
(2) Conclusive Proof of Probable Cause. A determination or judgment of guilt, where the offense is a felony under applicable law, shall constitute conclusive proof of probable cause and The Florida Bar may file a complaint with the Supreme Court of Florida, or proceed under rule 3-7.9, without there first having been a separate finding of probable cause.
(3)Determination or Judgment of Guilt as Evidence. A determination or judgment of guilt, whether for charges that are felony or misdemeanor in nature, shall be admissible in disciplinary proceedings under these rules, and in those cases where the underlying criminal charges constitute felony charges, determinations or judgments of guilt shall, for purposes of these rules, constitute conclusive proof of the criminal offense(s) charged. The failure of a trial court to adjudicate the convicted attorney guilty of the offense(s) charged shall be considered as a matter of mitigation only.
(j) Professional Misconduct in Foreign Jurisdiction.
(1) Notice of Discipline by a Foreign Jurisdiction. A member of The Florida Bar who has submitted a disciplinary resignation or otherwise surrendered a license to practice law in lieu of disciplinary sanction, or has been disbarred or suspended from the practice of law by a court or other authorized disciplinary agency of another state or by a federal court shall within 30 days after the effective date of disbarment or suspension file with the Supreme Court of Florida a copy of the order or judgment effecting such disbarment or suspension.
(2) Adjudication or Discipline by a Foreign Jurisdiction. In cases of a final adjudication by a court or other authorized disciplinary agency of another jurisdiction, such adjudication of misconduct shall be sufficient basis for the filing of a complaint by The Florida Bar and assignment for *226 hearing before a referee without a finding of probable cause under these rules.
RULE 3-7.4 GRIEVANCE COMMITTEE PROCEDURES
(a) Notice of Hearing. When notice of a grievance committee hearing is sent to the respondent, such notice shall be accompanied by a list of the grievance committee members.
(b) Complaint Filed With Grievance Committee. A complaint received by a committee direct from a complainant shall be reported to the appropriate branch staff bar counsel for docketing and assignment of a case number, unless the committee resolves the complaint within 10 days after receipt of the complaint. A written report to bar counsel shall include the following information: complainant’s name and address, respondent’s name, date complaint received by committee, copy of complaint letter or summary of the oral complaint made, and the name of the committee member assigned to the investigation. Formal investigation by a grievance committee may proceed after the matter has been referred to bar counsel for docketing.
(c) Investigation. A grievance committee is required to consider all charges of misconduct forwarded to the committee.by bar counsel whether based upon a written complaint or not.
(d) Conduct of Proceedings. The proceedings of grievance committees may be informal in nature and the committees shall not be bound by the rules. of. evidence.
(e) No Delay for Civil or Criminal Proceedings. An investigation shall not be deferred or suspended without the approval .of the board even though the respondent is made a party to civil litigation or is a defendant or is acquitted in a criminal action, notwithstanding that either of such proceedings involves the subject matter of the investigation.
(f) Counsel and Investigators. Upon request of a grievance committee, staff counsel may appoint a bar counsel or an investigator to assist the committee in an investigation. Bar counsel shall assist each grievance committee in carrying out its investigative and administrative duties and shall prepare status reports for the committee, notify complainants and respondents of committee actions as appropriate, and prepare all reports reflecting committee findings of probable cause, no probable cause, recommended discipline for minor misconduct, and letters of advice after no probable cause findings.
(g) Quorum, Panels, and Vote.
(1) Quorum. Three members of the committee, 2 of whom must be lawyers, shall constitute a quorum.
(2) Panels. The grievance committee may be divided into panels of not fewer than 3 members, 2 of whom must be lawyers. Division of the grievance committee into panels shall only be upon concurrence of the designated reviewer and the chair of the grievance committee. The 3 member panel shall elect 1 of its lawyer members to preside over the panel’s actions. If the chair or vice-chair is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(3) Vote. All findings of probable cause and recommendations of guilt of minor misconduct shall be made by affirmative vote of a majority of the committee members present, which majority must number at least 2 members. There shall be no required minimum number of lawyer members voting in order to satisfy the requirements of this rule. The number of committee members voting for or against the committee report shall be recorded. Minority reports may be filed. A lawyer *227 grievance committee member may not vote on the disposition of any matter in which that member served as the investigating member of the committee.
(h) Rights and Responsibilities of the Respondent. The respondent may be required to testify and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel. At a reasonable time before any finding of probable cause or minor misconduct is made, the respondent shall be advised of the conduct that is being investigated and the rules that may have been violated. The respondent shall be provided with all materials considered by the committee and shall be given an opportunity to make a written statement, sworn or unsworn, explaining, refuting, or admitting the alleged misconduct.
(i) Rights of the Complaining Witness. The complaining witness is not a party to the disciplinary proceeding. Unless it is found to be impractical by the chair of the grievance committee due to unreasonable delay or other good cause, the complainant shall be granted the right to be present at any grievance committee hearing when the respondent is present before the committee. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution, will excuse the completion of an investigation. The complaining. witness shall have no right to appeal.
(j) Finding of No Probable Cause.
(1) Authority of Grievance Committee. A grievance committee may terminate an investigation by finding that no probable cause exists to believe that the respondent has violated these rules. The committee may issue a letter of advice to the respondent in connection with the finding of no probable cause.
(2) Notice of Committee Action. Bar counsel shall notify the respondent and complainant of the action of the committee.
(3) Effect of No Probable Cause Finding. A finding of no probable cause by a grievance committee shall not preclude the reopening of the case and further proceedings therein.
(4) Disposition of Committee Files. Upon the termination of the grievance committee’s investigation, the committee’s file shall be forwarded to bar counsel for disposition in accord with established bar policy.
(k) Letter Reports in No Probable Cause Cases. Upon a finding of no probable cause, bar counsel will submit a letter report of the no probable cause finding to the complainant, presiding member, investigating member, and the respondent, including any documentation deemed appropriate by bar counsel and explaining why the complaint did not warrant further proceedings. Letters of advice issued by a grievance committee in connection with findings of no probable cause shall be signed' by the presiding member of the committee. Letter reports and letters of advice shall not constitute a disciplinary sanction.
(l) Preparation, Forwarding, and Review of Grievance Committee Complaints. If a grievance committee finds probable cause, the bar counsel assigned to the committee shall promptly prepare a record of its investigation and a formal complaint. The record before the committee shall consist of all reports, correspondence, papers, and/or recordings furnished to or received from the respondent, and the transcript of grievance committee meetings or hearings, if the proceedings were attended by a court reporter; provid *228 ed, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The formal complaint shall be signed by the member of the committee who presided in the proceeding. The formal complaint shall be in such form as shall be prescribed by the board. If the presiding member of the grievance committee disagrees with the form of the complaint, the presiding member may direct bar counsel to make changes accordingly. If bar counsel does not agree with the changes, the matter shall be referred to the designated reviewer of the committee for appropriate action. When a formal complaint by a grievance committee is not referred to the designated reviewer, or returned to the grievance committee for further action, the formal complaint shall be promptly forwarded to and reviewed by bar.headquarter-s staff counsel who shall file the formal complaint, and furnish a copy of the formal complaint to the respondent. A copy of the record shall be made available to the respondent at the respondent’s expense.
(m) Recommendation of Admonishment for Minor Misconduct. If the committee recommends an admonishment for minor misconduct, the grievance committee report shall be drafted by bar counsel and signed by the presiding member. The committee report need only include: (1) the committee’s recommendations regarding the admonishment, revocation of certification, and conditions of recertification; (2) the committee’s recommendation as to the method of administration of the admonishment; (3) a summary of any additional charges that will be dismissed -if the admonishment is approved; (4) any comment on mitigating, aggravating, or evidentiary matters that the committee believes will be helpful to the board in passing upon the admonishment recommendation; and (5) an admission of minor misconduct signed by the respondent, if the respondent has admitted guilt to minor misconduct. No record need be submitted with, such a report. After the presiding member signs the grievance committee report, the report shall be returned to bar counsel. The report recommending .an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the designated reviewer does not present the same to the disciplinary review committee for action by the board, the report shall then be served on the respondent by bar counsel.
(n) Rejection of Admonishment. The order of admonishment shall become final unless rejected by the respondent within 15 days after service upon the respondent. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause.
(o ) Recommendation of Diversion to Remedial Programs. A grievance committee may recommend, as an alternative to issuing a finding of minor misconduct or nó probable cause with a letter of advice, diversion of the disciplinary case to a practice and professionalism enhancement program as provided elsewhere in these rules. A respondent may reject the diversion recommendation in the same manner as provided in the rules applicable to rejection of findings of minor misconduct. In the event that a respondent rejects a recommendation of diversion, the matter shall be returned to the committee for further proceedings.
(p) Appointment — of—Bar—Counsel Preparation, Review, and Filing of Complaint. When a grievance committee for *229 mal complaint is not referred to the disciplinary review committee, or returned to the grievance committee, staff counsel of The Florida-dBar-headquarters in-Tallahassee may — appoint-bar counsel unless — bar counsel has been appointed, shall sign the complaint and file the same in the Supreme Court of Florida, serve a copy on the respondent, and request the Supreme Court of Florida to assign a referee to try the cause. If probable cause is found by the board, bar counsel will prepare the formal complaint.
RULE 3-7.5 PROCEDURES BEFORE THE BOARD OF GOVERNORS
(a)Review of Grievance Committee Matters.
(1) The disciplinary review committee shall review those grievance committee matters referred to it by a designated reviewer. The committee shall make a report to the board and unless overruled by the board the report shall be final.
(2) Whenever a grievance matter is referred to the disciplinary review committee by the designated reviewer, the disciplinary review committee shall promptly review the actions of the grievance committee and the recommendations of the designated reviewer and make a report to the board providing for the issuance of:
(A) an admonishment, which the respondent may thereafter reject in the same manner as an admonishment recommended by a grievance committee;
(B) confirmation of the formal complaint;
(C) reversal of the grievance committee and a finding of no probable cause; or
(D) return of the matter to the grievance committee for further proceedings.
(3) The disciplinary review committee report shall be final unless overruled by the board. If the board shall find no probable cause, staff bar counsel shall notify the respondent, the grievance committee, and the complaining witness.
(b) Review by the Designated Reviewer. A designated reviewer may review the actions of a grievance committee. In order to allow for review by the designated reviewer, notice of grievance committee action finding no probable cause, no probable cause with a letter of advice, minor misconduct, or probable cause shall be given to the designated reviewer. If the designated reviewer disagrees with the grievance committee action, the designated reviewer shall make a report and recommendation to the disciplinary review committee. The designated reviewer shall make the report and recommendation within 21 days following the mailing date of the notice of grievance committee action; otherwise the grievance committee action shall become final.
(c) Finding of Probable Cause. The board, on the basis of the report of any regular or special grievance committee, may by majority vote find probable cause and direct the filing of a formal complaint against an attorney.
(d) Finding of No Probable Cause. A finding of no probable cause by the board shall be final and no further proceedings shall be had in the matter by The Florida Bar.
(e) Control of Proceedings. Bar counsel, however appointed, at all times shall be subject to the direction of the board. In the exercise of its discretion as the governing body of The Florida ■ Bar, the board prior to the receipt of evidence by the referee has the power to terminate disciplinary proceedings before a'referee, whether such proceedings have been instituted upon a finding of probable cause by the board or a grievance committee.
*230 (f) Filing Service on Board of Governors. All matters to be filed with or served upon the board shall be addressed to the board of governors and filed with the executive director. The executive director shall be the custodian of the official records of The Florida Bar.
RULE 3-7.6 PROCEDURES BEFORE A REFEREE
(a) Referees. The chief justice shall have the power to appoint referees to try disciplinary cases and to delegate to a chief judge of a judicial circuit the power to appoint referees for duty in.the chief judge’s circuit. Such appointees shall ordinarily be active county or circuit judges, but the chief justice may appoint retired judges.
(b) Trial by Referee. When a finding has been made by a grievance committee or by the board. that there is cause to believe that a member of The Florida Bar is guilty of misconduct justifying disciplinary action, and the formal complaint based on such finding of probable cause has been assigned by the chief justice for trial before a referee, the proceeding thereafter shall be an adversary proceeding that shall be conducted as hereinafter set forth.
(c) Venue. The trial shall be held in the county in which an alleged offense occurred or in the county where the respondent resides or practices law or last practiced law in Florida, whichever shall be designated by the Supreme Court of Florida; provided, however, that if the respondent is not a resident of Florida and if the alleged offense is not committed in Florida, the trial shall be held in a county designated by the chief justice.
(d) Style- of Proceedings. All proceedings instituted by The Florida Bar shall be styled “The Florida Bar, Complainant, v. (name of respondent), Respondent,” and “In The Supreme Court of Florida (Before a Referee),”
(e) Nature of Proceedings.
(1) Administrative in Character. A disciplinary proceeding is neither civil nor criminal but is a quasi-judicial administrative proceeding. The Florida Rules of Civil Procedure apply except as otherwise provided in this rule.
(2) Discovery. Discovery shall, be available to the parties in accordance with the Florida Rules of Civil Procedure.
(f) Bar Counsel. Bar counsel shall make such investigation as is necessary and shall -prepare and prosecute with utmost diligence any ease assigned. Assistant bar counsel shall — serve under the general supervision -of-bar-counselr
(g) Pleadings. Pleadings may be informal and shall comply with the following requirements:
(1) Complaint; Consolidation and Severance.
(A) Filing. Staff counsel shall prepare tThe complaint and'file the sameshall be filed in the Supreme Court of Florida.
(B) Content. The complaint shall set forth the particular act or acts of conduct" for which the attorney is sought to be disciplined.
(C) Joinder of Charges and Respondents; Severance. A complaint may embrace any number of charges against 1 or more respondents, and charges may be against any 1 or any number of respondents; but a severance may be granted by the referee when the ends of justice require it.
(2) Answer and Motion. The respondent shall answer the complaint and, as a part thereof or by separate motion, may challenge only the sufficiency of the complaint and the jurisdiction of the forum. All other defenses shall be incorporated in the respondent’s answer. The answer *231 may invoke any proper privilege, immunity, or disability available to the respondent. All pleadings of the respondent must be filed within 20 days of service of a copy of the complaint.
(3) Reply. If the respondent’s answer shall contain any new matter or affirmative defense, a reply thereto may be filed within 10 days of the date of service of á copy upon bar counsel, but failure to file such a reply shall not prejudice The Florida Bar. All affirmative allegations' in the respondent’s answer shall be considered as denied by The Florida Bar.
(4) Disposition of Motions. Hearings upon motions may be deferred until the final hearing, and, whenever heard, rulings thereon may be reserved until termination of the final hearing.
(5) Filing and Service of Pleadings.
(A) Prior to Appointment of Referee. Any pleadings filed in a case prior to appointment of a referee shall be filed with the Supreme Court of Florida and shall bear a certificate of service showing parties upon whom service of copies has been made. On appointment of referee, the Supreme Court of Florida shall notify the parties of such appointment and forward all pleadings filed with the court to the referee for action.
(B) After Appointment of Referee. All pleadings, motions, notices, and orders filed after appointment of a referee. shall be filed with the' referee and shall bear a certificate of service showing service of a copy on the staff counsel and bar counsel of The Florida Bar and on all interested parties to the proceedings.
(6) Amendment. Pleadings may be amended by order of the referee, and a reasonable time shall be given within which to respond thereto.
(7) Expediting the Trial. If it shall be made to appear that the date of final hearing should be expedited in the public interest, the referee may, in the referee’s discretion, shorten the time for filing pleadings and the notice requirements as provided in this rule.
(8)Disqualification of Referee. Upon motion of either party, a referee may be disqualified from service in the same manner and to the same extent that a trial judge may be disqualified under existing law from acting in a judicial capacity. In the event of disqualification, the chief justice shall appoint a successor.
(h) Notice of Final Hearing. The cause, may be set down for trial by either party or the referee upon not less than 10 days’ notice. The trial shall be held as soon as possible following the expiration of 10 days from the filing of the respondent’s answer, or if no answer is filed, then from the date when such answer is due.
(i) The Respondent. Unless the respondent claims a privilege or right properly available under applicable federal or state law, the respondent may be called as a witness by The Florida Bar to make specific and complete disclosure of all matters material to the issues. When the respondent is subpoenaed to appear and give testimony or to produce books, papers, or documents and refuses to answer or to produce such books, papers, or documents, or, having been duly sworn to testify, refuses to answer any proper question, the respondent may be cited for contempt of the court.-
(j) Complaining Witness. The complaining witness is not a party to the disciplinary proceeding, and shall have no rights other than those of any other witness. However, unless it is found to be impractical due to unreasonable delay or other good cause, and after the complaining witness has testified during the case in chief, the referee may grant the complain *232 ing witness the right to be present at any-hearing when the respondent is also present. A complaining witness may be called upon to testify ánd produce evidence as any other witness. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution will excuse failure to complete any trial. The complaining witness shall have no right to appeal.
(k) Referee’s Report.
(l) Contents of Report. Within 30 days after the conclusion of a trial before a referee or 10 days after the referee receives the transcripts of all hearings, whichever is later, or within such extended period of time as may be allowed by the chief justice for good cause shown, the referee shall make a report and enter it as part of the record, but failure to enter the report in the time prescribed shall not deprive the referee of jurisdiction. The referee’s report shall include:
(A) a finding of fact as to each item of misconduct of which the respondent is charged, which findings of fact shall enjoy the same presumption of correctness as the judgment of the trier of fact in a civil proceeding;
(B) recommendations as to whether the respondent should be found guilty of misconduct justifying disciplinary measures;
(C) recommendations as to the disciplinary measures to be applied;
(D) a statement of any past disciplinary measures as ■ to the respondent that are on record with the executive director of The Florida Bar or that otherwise become known to the referee through evidence properly admitted by the referee during the course of the proceedings (after a finding of guilt, all evidence of prior disciplinary measures may be offered by bar counsel subject to appropriate objection or explanation by respondent); and
(E)a statement of costs incurred and recommendations as to the manner in which such costs should be taxed.
(2) Filing. The referee’s report and record of proceedings shall in all cases be transmitted together to the Supreme Court of Florida. Copies of the report shall be served on the parties including the staff counsel of -The-Florida-Bar. The referee shall serve a copy of the record on staff bar counsel with the report. Staff Bar counsel will make a copy of the record, as furnished, available to other parties on request and payment of the actual costs of reproduction.
{I) The Record.
(1) Recording of Testimony. All hearings at which testimony is presented shall be attended by a court reporter who shall record all testimony. Transcripts of such testimony are not required to be filed in the matter, unless requested by a party, who shall pay the cost of transcription directly, or ordered by the referee, in which case the costs thereof are subject to assessment as elsewhere provided in these rules.
(2) Contents. The record shall include all items properly filed in the cause including pleadings, recorded testimony, if transcribed, exhibits in evidence, and the report of the referee.
(m)Plea of Guilty by Respondent. At any time during the progress of disciplinary proceedings, a respondent may tender a plea of guilty.
(1) Before Filing of Complaint. If the plea is tendered before filing of a complaint by staff counsel, such plea shall be tendered in writing to the grievance committee or bar counsel.
*233 (2) After Filing of Complaint. If the complaint has been filed against the respondent, the respondent may enter a plea of guilty thereto by filing the same in writing with the referee to whom the cause has been assigned for trial. Such referee shall take such testimony thereto as may be advised, following which the referee will enter a report as otherwise provided.
(3) Unconditional. An unconditional plea of guilty shall not preclude review as to disciplinary measures imposed.
(4) Procedure. Except as herein provided, all procedure in relation to disposition of the cause on pleas of guilty shall be as elsewhere provided in these rules.
(n) Cost of Review or Reproduction.
(1) The charge for reproduction, when photocopying or other reproduction is performed by the bar, for the purposes of these rules shall be as determined and published annually by the executive director. In addition to reproduction charges, the bar may charge a reasonable fee incident to a request to review disciplinary records or for research into the records of disciplinary proceedings and identification of documents to be reproduced.
(2) When the bar is requested to reproduce documents that are voluminous or is requested to produce transcripts in the possession of the bar, the bar may decline to reproduce the documents in the offices of the bar and shall inform the requesting person of the following options:
(A) purchase of the transcripts from the court reporter service that produced them;
(B) purchase of the documents from the third party from whom the bar received them; or
(C) designation of a commercial photocopy service to which the bar shall deliver the original documents to be copied, at the requesting party’s expense, provided the photocopy service agrees to preserve and return the original documents and not to release them to any person without the bar’s consent.
(o) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses; .
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including of the respondent if acting as counsel; and
(I) an administrative fee in the amount of $750 when costs are assessed in favor'of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and, absent an abuse of discretion, the referee’s award shall not be reversed.
(3) Assessment of Bar Costs. When the bar is successful, in whole or in part, the referee may assess the bar’s costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Respondent’s Costs. When the bar is unsuccessful in the prosecution of a particular matter, the referee , may assess the respondent’s costs against' the bar in the event that there was no justiciable issue of either law or fact raised by the bar.
*234 Court Comment
A comprehensive referee’s report under subdivision (k) is beneficial to a reviewing court so that the court need not make assumptions about the referee’s intent or return the report to the referee for clarification. The referee’s report should list and address each issue in the case and cite to available authority for the referee’s recommendations concerning guilt and discipline.
RULE 3-7.7 PROCEDURES BEFORE SUPREME COURT OF FLORIDA
All reports of a referee and all judgments entered in proceedings under these rules shall be subject to review by the Supreme Court of Florida in the following manner:
(a) Right of Review.
(1) Any party to a proceeding may procure review of a report of a referee or a judgment, or any specified portion thereof, entered under these rules.
(2) The Supreme Court of Florida shall review all reports and judgments of referees recommending probation, public -reprimand, suspension, disbarment, or resignation pending disciplinary proceedings.
(3) A referee’s report that does not recommend probation, public reprimand, suspension, disbarment, or resignation pending disciplinary proceedings, shall be final if not appealed.
(b) Appointment of Bar Counsel. The board or staff counsel, if authorized by the board, may appoint new or additional bar counsel to represent The Florida Bar on any review.
(c) Procedure for Review. Review by the Supreme Court of Florida shall be in accordance with the following procedures:
(1)Time for Review. Proceedings for review shall be commenced within 4& 60 days of the termination of the meeting of the--board-following by 10 days the mailing date of a letter from on which the referee servinges a copy of the referee report on the respondent and The Florida Bar, but in all events- the-respondent shall be allowed at least-3Q-days-affer the mailing date-of-suoh — letter-feo-eommence review. Prompt written notice of such-termination date and the board’s action, if any, shall be communicated to the respondent. The proceeding shall be commenced by filing with the Supreme Court of Florida a petition for review, specifying those portions of the report of a referee sought to be reviewed. Within 40 20 days after service of such petition, the opposing party may file a cross-petition for review specifying any additional portion of the report that said party desires reviewed. The filing of such petition or cross-petition shall be jurisdictional as to a review to be procured as a matter of right, but the court may, in its discretion, consider a late-filed petition or cross-petition upon a showing, of good cause.
(2) Record on Review. The report and record filed by the referee shall constitute the record on review. If hearings were held at which testimony was heard, but no transcripts thereof were filed in the matter, the party seeking review shall order preparation of all such transcripts, file the original thereof with the court, and serve copies on the opposing party, on or before the time of filing of the initial brief, as provided elsewhere in this rule. The party seeking review shall be responsible for, and pay directly to the court reporter, the cost of preparation of transcripts. Failure to timely file and serve all of such transcripts may be cause for dismissal of the party’s petition for review.
(3) Briefs. The party first seeking review shall file a brief in support of the petition for review within 30 days of the *235 filing of the petition. The opposing party shall file an answer brief within 20 days after the service of the brief of the party seeking review, which answer brief shall also support any cross-petition for review. The party originally seeking review may file a reply brief within 10 days after the service of the answer brief.
(4) Oral Argument Request for oral argument may be filed in any case wherein a petition for review is filed, at the time of filing the first brief. If no request is filed, the case will be disposed of without oral argument unless the court orders otherwise.
(5) Burden. Upon review, the burden shall be upon the party seeking review to demonstrate that a report of a referee sought to be reviewed is erroneous, unlawful, or unjustified.
(6) Judgment of Supreme Court of Florida. After review, the Supreme Court of Florida shall enter an appropriate order or judgment. If no review is sought of a report of a referee entered under the rules and filed in the court, the findings of fact shall be deemed conclusive and the disciplinary measure recommended by the referee shall be the disciplinary measure imposed by the court, unless the court directs the parties to submit briefs or oral argument directed to the suitability of the disciplinary measure recommended by the referee. A referee’s report that becomes final when no review has been timely filed shall be reported in an order of the Supreme Court of Florida.
(d) Precedence of Proceedings. Petitions for review in disciplinary proceedings shall take precedence over all other civil causes in the Supreme Court of Florida.
(e) Extraordinary Writs. All applications for extraordinary writs that are concerned with disciplinary proceedings under these rules of discipline shall be made to the Supreme Court of Florida.
(f) Florida Rules of Appellate Procedure. To the extent necessary to implement this rule and if not inconsistent herewith, the Florida Rules of Appellate Procedure shall be applicable to petitions for review in disciplinary proceedings, provided service on The Florida Bar shall be accomplished by service on bar counsel and staff counsel.
(g) Contempt by Respondent. Whenever it is alleged that a respondent is in contempt in a disciplinary proceeding, a petition for an order to show cause why the respondent should not be held in contempt and the proceedings on such petition may be filed in and determined by the Supreme Court of Florida or as provided under rule 3 — 7.11(f).
(h) Pending Disciplinary Cases. If disbarment is ordered by the court, dismissal without prejudice of other pending cases against the respondent may be ordered in the court’s disbarment order.
RULE 3-7.9 CONSENT JUDGMENT
(a) Before Formal Complaint is Filed. If before a formal complaint is filed a respondent states a désire to plead guilty to a grievance committee report that finds probable cause and recommends further disciplinary proceedings, then staff counsel, with the approval of the designated board reviewer and concurrence of the board of governors, may consult established board guidelines for discipline, and advise the respondent of the discipline that will be recommended to the Supreme Court of Florida if a written plea of guilty is entered. If the board of governors or designated reviewer rejects a proposed consent judgment, staff bar counsel shall prepare and file a complaint as provided elsewhere in these rules.
*236 (b) After Filing of Formal Complaint. If a respondent states a desire to plead guilty to a formal complaint that has been filed, then bar counsel, with the approval of the designated board reviewer, may consult established board guidelines for discipline and advise the respondent of the discipline the bar will recommend to the referee if a written plea of guilty is entered. .
(c) Approval of Consent Judgments. Acceptance of any proposed consent judgment more severe than an admonishment shall be conditioned on final approval by the Supreme Court of Florida, and the court’s order will recite the disciplinary charges against the respondent.
(d) Content of Conditional Pleas. All conditional pleas shall show clearly by reference or otherwise the disciplinary offenses to which, the plea is made.
(e) Authority of Staff Counsel. Staff counsel has no authority to commit the board on any consent judgment not previously approved by the board. All consent judgments tentatively approved by staff counsel without prior, approval of the board shall be subject to board approval. In negotiating consent judgments with a respondent or in recommending acceptance, rejection, or offer of a tendered consent judgment, the grievance committee, branch staff counsel, and designated reviewer shall consider and express a recommendation on whether the consent judgment shall include revocation of certification if held by the attorney and restrictions to be placed on recertification in such areas. When certification revocation is agreed to in a consent judgment, the revocation and any conditions on recertification will be reported to the legal specialization and education director for recording purposes.
RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Reinstatement; Applicability. An attorney who has been suspended or placed on the inactive list for incapacity not related to misconduct may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of membership fees.
(b) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and 1 copy thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy shall be served on Staff Counsel, The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399-2300.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for elsewhere in this rule. The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments, disciplinary judgments, copies of income tax returns together with consents to secure original returns, occupation during suspension and information in connection therewith, financial statements, and statement of restitution of funds that were the subject matter of disciplinary proceedings. In cases seeking reinstatement from incapacity, the petition shall also include copies of all pleadings in the matter leading to placement on the inactive list and all such other matters as may be reasonably required to demonstrate the character and fitness of the petitioner to resume the practice of law.
*237 (c) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ensure payment of reasonable costs of the proceedings, as provided elsewhere in this rule.
(d) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary or incapacity proceedings have been paid and restitution has been made.
(e) Attorney for the Bar Counsel. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint, from the members in good standing of The Florida Bar-designated by the staff counsel-to-serve-as bar counsel — 1-or more attorneys to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(f) Determination of Fitness by Referee Hearing. The referee to whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as provided elsewhere in these rules. The matter to decide shall be the fitness of the petitioner to resume the practice of law. In determining the fitness of the petitioner to resume the practice of law, the referee shall consider whether the petitioner has engaged in any disqualifying conduct, the character and fitness of the petitioner, and whether the petitioner has been rehabilitated, as further described in this subdivision. All conduct engaged in after the date of admission to The Florida-Bar shall be relevant in proceedings under this rule.
(1) Disqualifying Conduct. A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis for denial of reinstatement. ' The following shall be considered as disqualifying conduct:
(A) unlawful conduct;
(B) academic misconduct;
(C) making or procuring any false or misleading statement or omission of relevant information, including any false or misleading statement or omission on any application requiring a showing of good moral character;
(D) misconduct in employment;
(E) acts involving dishonesty, fraud, deceit, or misrepresentation;
(F) abuse of legal process;
(G) financial irresponsibility;
(H) neglect of professional obligations;
(I) violation of an order of a court;
(J) evidence of mental or emotional instability;
(K) evidence of drug or alcohol dependency;-
(L) denial of admission to the bar in another jurisdiction on character and fitness grounds;
(M) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction; and
(N) any other conduct that reflects adversely upon the- character or fitness of the applicant.
(2) Determination of Character and Fitness. In addition to other factors in making this determination, the following fac *238 tors should be considered in assigning weight and significance to prior conduct:
(A) age at the time of the conduct;
(B) recency of the conduct;
(C), reliability of the information concerning the conduct;
(D) seriousness of the conduct;
(E) factors underlying the conduct;
(F) cumulative effect of the conduct or information;
(G) evidence of rehabilitation;
(H) positive social contributions since the conduct;
(I) candor in the discipline and reinstatement processes; and
(J) materiality of any omissions or misrepresentations.
(3) Elements of Rehabilitation. Any petitioner for reinstatement from discipline for prior misconduct shall be required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:
(A) strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable;
(B) unimpeachable character, and moral standing in the community;
(C) good reputation for professional ability, where applicable;
(D) lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative, or other proceeding;
(E) personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future;
(F) restitution of funds or property, where applicable;
(G)positive action showing rehabilitation by such things as a person’s occupation, religion, or community or civic service.
Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one’s community is an essential obligation of members of the bar.
(g) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least 10 days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(4) Summary Procedure. If after the completion of discovery bar counsel is unable to discover any evidence on which denial of reinstatement may be based and if no other person provides same, bar counsel may, with the approval of the designated reviewer and staff counsel, stipu *239 late to the issue of reinstatement, including conditions thereon. The stipulation shall include a statement of costs as provided elsewhere in these Rules Regulating The Florida Bar.
(h) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report that shall include the findings of fact and a recommendation as to-whether the petitioner is qualified to resume the practice of law. Such-report shall be in the form prescribed by the board. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on staff bar counsel and a copy of the report only on all other parties. Staff Bar counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(i) Review. Review of referee.reports in reinstatement proceedings shall be in accordance with rule 3-7.7.
(j) Recommendation of Referee and Judgment of the Court. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the referee shall enter a report recommending, and the court may enter an order of, reinstatement of the petitioner in The Florida Bar; provided, however, that the reinstatement may be conditioned upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner’s misconduct that led to the petitioner’s suspension of membership in The Florida Bar or conduct that led to the petitioner’s incapacity; and further provided, however, if suspension or incapacity of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as .may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension or incapacity.
(k) Successive Petitions. No petition for reinstatement shall be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person. In cases of incapacity no petition for reinstatement shall be filed within 6 months following an adverse judgment under this rule.
(l) Petitions for Reinstatement to Membership in Good Standing.
(1) Availability. Petitions for reinstatement under this rule are available to members placed on the inactive list for incapacity not related to misconduct and suspended members of the bar when the disciplinary judgment conditions their reinstatement upon a showing of compliance with specified conditions.
(2) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and an original and 1 copy filed therewith. A copy shall be served on Staff Counsel, The Florida Bar, '650 Apalachee Parkway, Tallahassee, Florida 32399-2300.
(3) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner’s tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization shall be furnished on a *240 separate sheet. The petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner’s statement concerning the following:
(A) name, age, residence, address, and number and relation of dependents of the petitioner;
(B) the conduct, offense, or misconduct upon which the suspension or incapacity was based, together with the date of such suspension or incapacity;
(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of' a felony or misdemeanor involving moral turpitude;
(D) the nature of the petitioner’s occupation in detail since suspension or incapacity, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
(F) a statement showing all residences maintained during said period, with names and addresses of landlords, if any;
(G) a statement showing all financial obligations of the petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients’ Security Fund or former clients at the date of filing of the petition, together with the- names and addresses of all creditors;
(H) .a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients’ Security Fund and the source and amount of funds used for this purpose;
(I) a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
(J) a statement as to whether any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and the disposition thereof;
(K) a statement of any procedure or inquiry, during said period, covering the petitioner’s standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority .in possession of the record thereof;
(L) a statement as to whether any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
(M) a concise statement of facts claimed to justify reinstatement to The Florida Bar;
(N) a statement showing the dates, general nature, and final disposition of every civil action wherein the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, *241 titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
(0) a statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.
(4) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the executive director bar counsel to local' board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this rule and also to those matters tending to show the petitioner’s rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(5) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
(m) Costs.
(1)Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including the petitioner if acting as counsel; and
(I) an administrative fee in the amount of $750 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and absent an abuse of discretion the referee’s award shall not be reversed.
(3) Assessment of Bar Costs. The costs incurred by the bar in any reinstatement case may be assessed against the petitioner unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
(4) Assessment of Petitioner’s Costs. The referee may assess the petitioner’s costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
(n) Readmission; Applicability. A former member who has been disbarred or whose petition for disciplinary resignation has been accepted may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. No application for readmission following disbarment or disciplinary resignation may be tendered until such time as all restitution and disciplinary costs as may have been ordered or assessed have been paid together with any interest accrued.
(1) Readmission After Disbarment. Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period of time as the court might determine in the disbarment order. An order of disbarment that states the disbarment is perma *242 nent shall preclude readmission to The Florida Bar.
(2)Readmission After Disciplinary Resignation.' In the case of a disciplinary resignation, no readmission application may be filed until 3 years after the date of the order of .the Supreme Court of Florida that accepted such disciplinary resignation or such additional time as the attorney may have stated in a petition for disciplinary resignation. No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission. If an attorney’s petition for disciplinary resignation states that it is without leave to apply for readmission, such condition shall preclude any readmission.
RULE 4-1.5 FEES FOR LEGAL SERVICES
(a) Illegal, Prohibited, or Clearly Excessive Fees. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2) the fee is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a non-client party, or any court, as to either entitlement to, or amount of, the fee.
(b) Factors to Be Considered in Determining Reasonable Fee. Factors to be considered as guides in determining a reasonable fee include:
(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) the significance of, or amount involved ,in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) the nature and length of the professional relationship with the client;
■ (7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client’s ability to pay rested to any significant degree on the outcome of the representation. ■
(c)Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
*243 (d) Enforceability of Fee Contracts. Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
(e) Duty to Communicate Basis or Rate of Fee to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph subdivision (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer’s compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall .be fur^ nished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(B) a contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(A) The contract shall contain the following provisions:
(i) “The undersigned client has, before signing this contract, received and read the statement of client’s rights and *244 understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s).” ■
(ii) “This contract may be cancelled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client.”
(B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
(i) Without prior court approval as specified below, any contingent fee that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. Before the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action;
1. 33 1/3% of any recovery up to $1 million; plus
2. 30% of any portion of the recov- ■ ery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment:
1. 40% of any recovery up to $1 million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
c. If all defendants admit liability at the- time of filing their answers and request a trial only on damages:
1. 33 1/3% of any recovery up to $1 million; plus
2. 20% of any portion of the recovery between $1 million and $2 million; plus
3. 15% of any portion of the recovery exceeding $2 million.
d. An additional 5% of any recovery after institution of any appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment.
(ii) If any client is unable to obtain an attorney of the client’s choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client’s rights and the terms of the proposed contract. The application for authorization .of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. A petition under *245 this subdivision shall contain a certificate showing service on the client and The Florida Bar in Tallahassee. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
(iii)-In Ccises-where-the client is to receive ■■ a recovery-thaf-will-be-paid-fe-ths client on -a future' structured-or.periodic tured-verdict-or-settlement-or — if-the-Gostis unknown, on the present money value of the — structured—verdict—or—settlement, whichever is less. — If the damages and the future schedule, then this limitation does negotiate with the-defeadant for that attorney’s fee in a structured verdict or settlement where suc-h-separate negotiations would place the attomey-ia-a-position- of eenffick
(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of Ghent’s rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client’s file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i)To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
(ii) To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
(iii) The 25% limitation shall not apply to those cases in which 2 or' more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply to the court in which the matter would be filed, if litigátion is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for authorization of the fee division in excess,of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint, or within 1.0 days of execution of a contract for division of fees when new counsel is engaged. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and The Florida Bar. Counsel may proceed with representation of the client pending court approval.
(iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing state *246 ment reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable -times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(6) In cases in which the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall be calculated only on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, this limitation does not apply. No attorney may negotiate separately with the defendant for that attorney’s fee in a structured verdict or settlement when separate negotiations would place the attorney in a position of conflict.
(g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), .a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(h) Credit Plans. Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer’s or law firm’s participation in an approved credit plan.
STATEMENT OF CLIENT’S RIGHTS FOR CONTINGENCY FEES
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in-writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer’s actual costs during that time. *247 If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers, to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the client, have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney’s fees, costs, and expenses to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer’s fee. Until you approve the closing statement you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how *248 the case is progressing and to have these questions answered to the best of your lawyer’s ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.
Client Signature Attorney Signature
Date Date
Comment
Basis, or rate of fee
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify 'the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer’s customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Rule 4-1.8(e) should be consulted regarding a lawyer’s providing financial assistance to a client in connection with litigation.
Terms of payment
A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer’s special knowledge of the value of the property.
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform *249 them in a way contrary to the client’s interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client’s ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client’s best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4 — 1.5(f)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.
Contingent fee regulation
Rule 4 — 1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4 — 1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncon-tingent and part contingent attorney’s fees, rule 4 — 1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such .a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4 — 1.5(f)(4)(B).
The-limitations in rule 4 — 1.5(f)(4)(B)(i)e are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4 — 1.5(f) (4) (B) (ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4 — 1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4 — 1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court *250 to inquire into the merits or details of theparticular action or claim that is the subject of the contract.
The proceedings before the trial court and the trial court’s decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law. or rules of evidence.
Rule 4-1.5(f) (4)(B)(iii) (6) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer’s fee is being paid over the same length of time as the schedule of payments to the client.
Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.
Fees that provide for a bonus or additional fees and that otherwise are not prohibited under the Rules Regulating The Florida Bar can be effective tools for structuring fees. For example, a fee contract calling for a flat fee and the payment of a bonus based on the amount of property retained or recovered in a general civil action is not prohibited by these rules. However, the bonus or additional fee must be stated clearly in amount or formula for calculation of the fee (basis or rate). Courts have held that unilateral bonus fees are unenforceable. The test of reasonableness and other requirements of this rule apply to permissible bonus fees.
Division of fee
. A division of fee is a single billing to a client covering the fee of 2 or more lawyers who are not in the same firm. A division of fee facilitates association of more than 1 lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring, lawyer and a trial specialist. Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of. services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.
Disputes over fees
Since the fee arbitration rule (Chapter 14) has. been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it. Where law prescribes a procedure for determining a lawyer’s fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
Referral fees and practices
A secondary lawyer shall not be entitled to a fee greater - than the limitation set forth in rule 4 — 1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all *251 of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rule 4 — 1.5(f) (4) (D) (iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 44.5(f)(4)(D)(iii) should only occur in a small percentage of cases arising under rule 4 — 1.5(f)(4).
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.
The trial court’s responsibility when reviewing an application for authorization of a fee division under rule 4^1.5(f)(4)(D)(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case.. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel’s fee is established. However, the effect should not' be to impose an unreasonable fee on the client.
RULE 4-1.8 CONFLICT OF INTEREST; PROHIBITED AND OTHER TRANSACTIONS
(a) Business Transactions With or Acquiring Interest Adverse to Client. A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, except a lien granted by law to secure a lawyer’s fee or expenses, unless:
(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner that can be reasonably understood by the client;
(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
(3) the client consents in writing thereto.
(b) Using Information to Disadvantage of Client. A lawyer shall not use information relating to representation of a *252 client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by rule 4-1.6.
(c) Gifts to Lawyer or Lawyer’s Family. A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee.
(d) Acquiring Literary or Media Rights. Prior to the conclusion of representation of a client, a lawyer shall not make or negotiate an agreement giving the lawyer literary or media rights to a portrayal or account based in substantial part on information relating to the representation.
(e) Financial Assistance to Client. A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
(1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.
(f) Compensation by Third Party. A lawyer shall not accept compensation for representing a client from one other than the client unless:
(1) the client consents after consultation;
(2) there is no interference with the lawyer’s independence of professional judgment or with the client-lawyer relationship; and
(3) information relating to representation of a client is protected as required by rule 4-1.6.
(g) Settlement of Claims for Multiple Clients. A lawyer who represents 2 or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or in a criminal case an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.
(h) Limiting Liability for Malpractice. A lawyer shall not make an agreement prospectively limiting the lawyer’s liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement. A lawyer shall not settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.
(i) Acquiring Proprietary Interest in Cause of Action. A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:
(1) acquire a lien granted by law to secure the lawyer’s fee or expenses; and
(2) contract with a client for a reasonable contingent fee.
<j) Representation of Insureds. When a lawyer undertakes the defense of an insured other than a governmental entity, at the expense of an insurance company, in regard to an action or claim for personal injury or for property damages, or for death or loss of services resulting from personal injuries based upon tortious conduct, including product liability claims, the Statement of Insured Client’s Rights shall be provided to the insured at the com *253 mencement of the representation. The lawyer shall sign the statement certifying the date on which the statement was provided to the insured. The lawyer shall keep a copy of the signed statement in the Ghent’s file and shall retain a copy of the signed statement for 6 years after the representation is completed. The statement shall be available for inspection at reasonable times by the insured, or by the appropriate disciplinary agency. Nothing in the Statement of Insured Client’s Rights shall be deemed to augment or detract from any substantive or ethical duty of a lawyer or affect the extradiscipli-nary consequences of violating an existing substantive legal or ethical duty; nor shall any matter set forth in the Statement of Insured Client’s Rights give rise to an independent cause of action or create any presumption that an existing legal or ethical duty has been breached.

STATEMENT OF INSURED CLIENT’S RIGHTS

An insurance company has selected a lawyer to defend a lawsuit or claim against you. This Statement of Insured Client’s Rights is being given to you to assure that you are aware of your rights regarding your legal representation. This disclosure statement highlights many, but not all, of your rights when your legal representation is being provided by the insurance eompa-HZ:
1.Your Lawyer. If you have ' questions concerning the selection of the lawyer by the insurance company, you should discuss the matter with the insurance company and the lawyer. As a client, you have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours and give you this information in writing, if you request it. Your lawyer is responsible for keeping you reasonably informed regarding the case and promptly complying with your reasonable requests for information. You are entitled to be informed of the final disposition of your case within a reasonable time.
2. Fees and Costs. Usually the insurance company pays all of the fees and costs of defending the claim. If you are responsible for directly paying the lawyer for any fees or costs, your lawyer must promptly inform you of that.
3. Directing the Lawyer. If your policy, like most insurance policies, provides for the insurance company to control the defense of the lawsuit, the lawyer will be taking instructions from the insurance company. Under such policies, the lawyer cannot act solely on your instructions, and at the same time, cannot act contrary to your interests. Your preferences should be communicated to the lawyer.
4. Litigation Guidelines. Many insurance companies establish guidelines governing how lawyers are to proceed in defending a claim. Sometimes those guidelines affect the range of actions the lawyer can take and may require authorization of the insurance company before certain actions are undertaken. You are entitled to know the guidelines affecting the extent and level of legal services being provided to you. Upon request, the lawyer or the insurance company should either explain the guidelines to you or provide you with a copy. If the lawyer is denied authorization to provide a service or undertake an action the lawyer believes necessary to your defense, you are entitled to be informed that the insurance company has declined authorization for the service or action.
5. Confidentiality. Lawyers have a general duty to keep secret the confidential information a client provides, subject to limited exceptions. However, the lawyer chosen to represent you also may have *254 a duty to share with the insurance company information relating to the defense or settlement of the claim. If the lawyer learns of information indicating that the insurance company is not obligated under the policy to cover the claim or provide a defense, the lawyer’s duty is to maintain that information in confidence. If the lawyer cannot do so, the lawyer may be required to withdraw from the representation without disclosing to the insurance company the nature of the conflict of interest which has arisen. Whenever a waiver of the lawyer-client confidentiality privilege is needed, your lawyer has a duty to consult with you and obtain your informed consent. Some insurance companies retain auditing companies to review the billings and files of the lawyers they hire to represent policyholders. If the lawyer believes a bill review or other action releases information in a manner that, is contrary to your interests, the lawyer should advise you regarding the matter.
6. Conflicts of Interest. Most insurance policies state that the insurance company will provide a lawyer to represent your interests as well as those of the insurance company. The lawyer is responsible for identifying conflicts of interest and advising you of them. If at any time you believe the lawyer provided by the insurance company cannot fairly represent you because of conflicts of interest between you and the company (such as whether there is insurance coverage for the claim against you), you should discuss this with the lawyer and explain why you believe there is a conflict. If an actual conflict of interest arises that cannot be resolved, the insurance company may be required to provide you with another lawyer.
7. Settlement. Many policies state that the insurance company alone may make a final decision regarding settlement of a claim, but under some policies your agreement is required. If you want to object to or encourage a settlement within policy limits, you should discuss your concerns with your lawyer to learn your rights and possible consequences. No settlement of the case requiring you to pay money in excess of your policy limits can be reached without your agreement, following full disclosure.
8. Your Risk. If you lose the case, there might be a judgment entered against you for more than the amount of' your insurance, and you might have to pay it. Your lawyer has a duty to advise you about this risk and other reasonably foreseeable adverse results.
9. Hiring Your Ovm Lawyer. The lawyer provided by the insurance company is representing you only to defend the lawsuit. If you desire to pursue a claim against the other side, or desire legal services not directly related to the defense of the lawsuit against you, you will need to make your own arrangements with this or another lawyer. You also may hire another lawyer, at your own expense, to monitor the defense being provided by the insurance company. • If there is a reasonable risk that the claim made against you exceeds the amount of coverage under your policy, you should consider consulting another lawyer.
10. Reporting Violations. If at any time you believe that your lawyer has acted in violation of your rights, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar call (850) 561 5839 or you may access the Bar atwww.FlaBar.org.'

IF YOU HAVE ANY QUESTIONS ABOUT YOUR RIGHTS, PLEASE ASK FOR AN EXPLANATION.

CERTIFICATE

The undersigned hereby certifies that this Statement of Insured Client’s Rights *255 has been provided to.(name of insured/client(s)). by .(mail/hand delivery). at .(address of insured/client(s) to which mailed or delivered), on.(date).
[Signature of Attorney]
[Print/Type Name]
Florida Bar No.: .
Comment
Transactions between client and lawyer
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions a review by independent counsel on behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client’s disadvantage. For example, a lawyer who has learned that the client is investing in specific real estate may not, without the client’s consent, seek to acquire nearby property where doing so would adversely affect the client’s plan for investment.. Subdivision (a) does not, however, apply to standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities services. In such transactions the lawyer has no advantage in dealing with the client, and the restrictions in, subdivision (a) are unnecessary and impracticable. Likewise, subdivision (a) does not prohibit a lawyer from acquiring or asserting a lien granted by law to secure the lawyer’s fee or expenses.
A lawyer may accept a gift from a client, if the transaction meets general standards of fairness. For example,, a simple gift such as a present given at a holiday or as a token of appreciation is permitted. If ef-fectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, however, the client should have the detached advice that another lawyer can provide. Subdivision (c) recognizes an exception where the client is a relative of the donee or the gift is not substantial.
Literary rights
An agreement by which a lawyer, acquires literary or media rights concerning the conduct of the representation creates a conflict between the interests of the client and the personal interests of the lawyer. Measures suitable in the representation of the client may detract from the publication value of an account of the representation. Subdivision (d) does not prohibit a lawyer representing a client in a transaction concerning literary property from agreeing that the lawyer’s fee shall consist of a share in ownership in the property if the arrangement conforms to rule 4-1.5 and subdivision (i).
Person paying for lawyer’s services
Rule 4-1.8(f) requires disclosure of the fact that the lawyer’s services are being paid for by a third party. Such an arrangement must also conform to the requirements of rule 4-1.6 concerning confidentiality and rule 4-1.7 concerning conflict of interest. Where the client is a class, consent may be obtained on behalf of the class by court-supervised procedure.
Acquisition of interest in litigation
Subdivision (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, which has its basis in common law champerty and maintenance, is subject to specific exceptions developed in decisional law and continued in *256 these rules, such as the exception for reasonable contingent fees set forth in rule 4-1.5 and the exception for certain advances of the costs of litigation set forth in subdivision (e).
This rule is not intended to apply to customary qualification and limitations in legal opinions and memoranda.
Representation of insureds
As with any representation of a client when another person or client is paying for the representation, the representation of an insured client at the request of the insurer creates a special need for the lawyer to be cognizant of the potential for ethical risks. The nature of the relationship between a lawyer and a client can lead to the insured or the insurer having expectations inconsistent with the duty of the lawyer to maintain confidences, avoid conflicts of interest, and otherwise comply with professional standards. When a lawyer undertakes the representation of an insured client at the expense of the insurer, the lawyer should ascertain whether the lawyer will be representing both the insured and the insurer, or only the insured. Communication with both the insured and the insurer promotes their mutual understanding of the role of the lawyer in the particular representation. The Statement of Insured Client’s Rights has been developed to facilitate the lawyer’s performance of ethical responsibilities. The highly variable nature of insurance and the responsiveness of the insurance industry in developing new types of coverages for risks arising in the dynamic American economy render it impractical to establish a statement of rights applicable to all forms of insurance. The Statement of Insured Client’s Rights is intended to apply to personal injury and property damage tort cases. It is not intended to apply to workers’ compensation cases. Even in that relatively narrow area of insurance coverage, there is variability among policies. For that reason, the statement is necessarily broad. It is the responsibility of the lawyer to explain the statement to the insured. In particular cases, the lawyer may need to provide additional information to the insured.
Because the purpose of the statement is to assist laypersons in understanding their basic rights as clients, it is necessarily abbreviated. Although brevity promotes the purpose for which the statement was developed, it also necessitates incompleteness. For these reasons, it is specifically provided that the statement shall not serve to establish any legal rights or duties, nor create any presumption that an existing legal or ethical duty has been breached. As a result, the statement and its contents should not be invoked by opposing parties as grounds for disqualification of a lawyer or for procedural purposes. The purpose of the statement would be subverted if it could be used in such a manner.
The statement is to be signed by the lawyer to establish that it was timely provided to the insured, but the insured client is not required to sign it. It is in the best interests of the lawyer to have the insured client sign the statement to avoid future questions, but it is considered impractical to require the lawyer to obtain the insured client’s signature in all instances.
Establishment of the statement and the duty to provide it to an insured in tort cases involving personal injury or property damage should not be construed as lessening the duty of the lawyer to inform clients of their rights in other circumstances. When other types of insurance are involved, when there are other third-party payors of fees, or when multiple clients are represented, similar needs for fully informing clients exist, as recognized in rules 4-1.7(c) and 4~1.8(f).
*257 RULE 4-1.9 CONFLICT OF INTEREST; FORMER CLIENT
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known. For purposes of this rule, “generally known” shall mean information of the type that a reasonably prudent lawyer would obtain from public records or through authorized processes for discovery of evidence.
Comment
After termination of a client-lawyer relationship, a lawyer may not represent another client except in conformity with this rule. The principles in rule 4-1.7 determine whether the interests of the present and former client are adverse. Thus, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So also a lawyer who has prosecuted an accused person could not properly represent the accused in a subsequent civil action against the government concerning the same transaction.
The scope of a “matter” for purposes of rule 4r-1.9(a) may depend on the facts of a particular situation or transaction. The lawyer’s involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. Similar considerations can apply to the reassignment of military lawyers between defense and prosecution functions within the same military jurisdiction. The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
Information acquired by the láwyer in the course of representing a client may not subsequently be used by the lawyer to the disadvantage of the client. However, the fact that a lawyer has once served a client does not preclude the lawyer from using generally known information, as defined in rule 4-1.9(b), about that client when later representing another client.
Disqualification from subsequent representation is for the protection of clients and can be waived by them. A waiver is effective only if there is disclosure of the circumstances, including the lawyer’s intended role in behalf of the new client.
With regard to an opposing party’s raising a question of conflict of interest, see comment to rule 4-1.7. With regard to disqualification of a firm with which a lawyer is associated, see rule 4-1.10.
RULE 4-1.15 SAFEKEEPING PROPERTY
(a) Clients’ and-Third-Party Funds to be Held in Trust. A lawyer shall hold in .trust, separate from-the lawyer’s own property, funds and property of-clients-or sion — in-connection with a representation. All funds, including advances for costs and *258 expenses, shall be-kept in a separate-account maintained in the state where’-the lawyer-’s- office is situated or elsewhere with the consent- of the-client or ■ third person, provided that funds may be separately held and maintained other than in-a bank account, if the-lawyer-reeeives written permission from-the client to do so and provided- that such written perm-ission-is received prior-to maintaining the funds other-than in a separate bank account..-I-n no event may-the lawyer com-mln-gle-lhc clienRs-fuhds with those of the lawyer-or-thóse of the lawyer's law-firm- — Other property- shall be- identified as such and appropriately safeguarded. — Complete records of such account funds and other property, including ellent-fun-ds-not maintained in a separate-bank account,- shall-be-kept by- the-lawyer and shall be-preserved for a period-of 6 years after-termination of the representation-
(b) Notice of — Receipt of Trust-Funds; -Delivery; — Accounting.—Upon receiving-funds or other-property in which a client or third person has an interest, a lawyer shall-promptly notify the-chen-t-or-third ■person- — Except as stated-in this rule or otherwise permitted by law-or — by-agreement ■ with — the—client,—a--lawyer—shall promptly deliver to the client or-third--person-any-funds or other-property that the elient-or-third person is-entitled to receive and, upon request by the.client-or-third person, shall promptly — render a full accounting-regarding such property-
(c) Disputed — Ownership—of—Funds. When in--the-eoarse of representation-a lawyer.is — in—possession - of property — in-which- both-lhe4awyer and -another-per-son-claim-interests, the-propert-y-sfaall-he-treaf-ed by the-lawyer-as trust property, but the portion belonging-to-the-lawyer or law firm shall — be- withdrawn within--a^-reasonable time-after it becomes due-unless-the-right of the lawyer or law firm-to receive it is disputed, in--which event the portion in dispute-shall be kept separate by the lawyer-until the dispute is resolved-
id) Compliance With Trust Accounting Rules. A lawyer shall comply with The Florida Bar Rules Regulating Trust Accounts.
Comm
A lawyer should hold property-of-others with the care required of -a-professlon-al fiduciary, — Securities-should-be kept in a safe deposit -box-,-except-when some other for-m-of-safekeeping is warranted-by-special circumstances. — All property that-is ■the, property ■ of clients.or-third persons should-be-kept-separate from the lawyer’s business.and — personal property and, if money, in 1 or more trust accounts,-unless-requested otherwise in writing - by — the client, — Separate trust accounts may.be warranted-when-adminlstering estate money -or acting-in similar-fiduciary capacities.
Lawyers often receive funds from-third parties-from-which-the-lawyer^s-fee-wili-be paid, — I-f-there-is risk that the client may divert the funds without paying the-fee,-the-dawyer is not required to remit the portion- from-whlch-the-fee- is to be paid. -However-,--a-lawy-er may not hold funds to coerce a client into accepting the lawyer’s contention, — The-dlsputed—portion of the funds should be kept ■ in ■-trust — and—the lawyer-should suggest means for prompt resolution of the dispute, such--as -arbitration, — The undisputed portion of the-funds-shall-be-promptly-distributed.
Third parties, such as a client’s creditors-,-may ■have-j-usbelaims-against funds or other property in a lawyer’s custody. — A lawyer-may-have-a duty under applicable law to protect such — third—party—claims against-wrongful interference by the client and, accordingly, may refuse-to-surrender the.property-to-the-ellent, — However, a lawyer should not unilaterally assume-to arbitrate a-dispute-between-the client and *259 the third-part-y-and where-appropriate the lawyer should consider-the possibility of depositing the-property-or funds in dispute into the registry of the-applicable court so ■that the matter may be adjudicated.
■The -obligations of a lawyer-under- this rule-are independent of those arising from activity other than rendering ■ legal services. — For example, a-lawyer who serves as an escrow agent is governed by the applicable-law-relating to fiduciaries even though -the lawyer does-not render legal services in the transaction
Subdivision (d) of this-rule requires each lawyer to be familiar with and comply with ■Rules — Regulating—Trust . Accounts — as adopted by The Florida-Bar.
-Money or other property-entrusted to a lawyer — for a-specific -purpose;-.including advances for costs and-expenses, is held in trust and must be applied only to that purpose. — Money and other property of clients ■ coming into the-hands of a lawyer are-not subject to counterclaim or setoff for-attorney’s fees, and a refusal to account-for and deliver over such property upon demand shall be a conversion. This is not-to-preclude the retention of money or other-property upon which a lawyer has a valid lien for services -or to preclude the payment of agreed fees from the proceeds of-transactions- or collections.
RULE 4-5.3 RESPONSIBILITIES REGARDING NONLAWYER ASSISTANTS
(a)Use of Titles by Nonlawyer Assistants. A person who uses the title of paralegal, legal assistant, or other similar term when offering or providing services to the public must work for or under the direction or supervision of a lawyer or an authorized business entity as defined elsewhere in these Rules Regulating The Florida Bar.
(b) Supervisory Responsibility. With respect to a nonlawyer employed or retained by or associated with a lawyer or an authorized business entity as defined elsewhere in these Rules Regulating The Florida Bar:
(al) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that, the person’s conduct is compatible with the professional obligations of the lawyer;
(b2) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person’s conduct is compatible with the professional obligations of the lawyer; and
(e3) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
(4A) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or
(2B) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over, the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.
(c) Ultimate Responsibility of Lawyer. Although paralegals or legal assistants may perform the duties delegated to them by the lawyer without the presence or active involvement of the lawyer,.the lawyer shall review and be responsible for the work product of the paralegals or legal assistants.
Comment
Lawyers generally, employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals such as paralegals and legal assistants. Such assistants, whether *260 employees or independent contractors, act for the lawyer in rendition of the lawyer’s professional services. A lawyer should give such assistants appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should-be-responsible- for their work product. The measures employed in supervising non-lawyers should take account of the fact that-they do not-havelevel of their legal training and the fact that they are not subject to professional discipline. If an activity requires the independent judgment and participation of the lawyer, it cannot be properly delegated to a non-lawyer employee.
Nothing provided in this rule should be interpreted to mean that a nonlawyer may have any ownership or partnership interest in a law firm, which is prohibited by rule 4-5.4. Additionally, this rule would not permit a lawyer to accept employment by a nonlawyer or group of nonlawyers, the purpose of which is to provide the supervision required under this rule. Such conduct is prohibited by rules 4-5.4 and 4-5.5.
RULE 4-5.7. RESPONSIBILITIES REGARDING NONLEGAL SERVICES
(a) Services Not Distinct From Legal Services. A lawyer who provides nonlegal services to a recipient that are hot distinct from legal services provided to that recipient is subject to the Rules Regulating The Florida Bar with respect to the provision of both legal and nonlegal services.
(b) Services Distinct From Legal Services. A lawyer who provides nonlegal services tó a recipient that are distinct from any legal services provided to the recipient is subject to the Rules Regulating The Florida Bar with respect to the nonlegal services if the lawyer knows or reasonably should know that the recipient might believe that the recipient is receiving the protection of a client-lawyer relationship.
(c) Services by Nonlegal Entity. A lawyer who is an owner, controlling party, employee, agent, or otherwise is affiliated with an entity providing nonlegal services to a recipient is subject to the Rules Regulating The Florida Bar with respect to the nonlegal services if the lawyer knows or reasonably should know that the recipient might believe that the recipient is receiving the protection of a client-lawyer relationship.
(d) Effect of Disclosure of Nature of Service. Subdivision (b) or (c) does not apply if the lawyer makes reasonable efforts to avoid any misunderstanding by the recipient receiving nonlegal services. Those efforts must include advising the recipient, preferably in writing, that the services are not legal services and that the protection of a client-lawyer relationship does not exist with respect to the provision of nonlegal services to the recipient.
Comment
For many years, lawyers have provided to their clients nonlegal services that are ancillary to the practice of law. A broad range of economic and other interests of clients may be served by lawyers participating in the delivery of these services. In recent years, however, there has been significant debate about the role the rules of professional conduct should play in regulating the degree and manner in which a lawyer participates in the delivery of nonlegal services. The ABA, for example, adopted, repealed, and then adopted a different version of ABA Model Rule 5.7. In the course of this debate, several ABA sections offered competing versions of ABA Model Rule 5.7.
*261 One approach to the issue of nonlegal services is to try to substantively limit the type of nonlegal services a lawyer may provide to a recipient or the manner in which the services are provided. A competing approach does not try to substantively limit the lawyer’s provision of nonlegal services, but instead attempts to clarify the conduct to which the Rules Regulating. The Florida Bar apply and to avoid misunderstanding on the part of the recipient of the nonlegal services. This rule adopts the latter approach.
The potential for misunderstanding
Whenever a lawyer directly provides nonlegal services, there exists the potential for ethical problems. Principal among these is the possibility that the person for whom the nonlegal services are performed may fail to understand that the services may not carry with them the protection normally afforded by the client-lawyer relationship. The recipient of the nonlegal services may expect, for example, that the protection of client confidences, prohibitions against representation of persons with conflicting interests, and obligations of a lawyer to maintain professional independence apply to the provision of nonlegal services when that may not be the case. The risk of confusion is acute especially when the lawyer renders both types of services with respect to the same matter.
Providing nonlegal services that are not distinct from legal services
Under some circumstances, the legal and nonlegal services may be so closely entwined that they cannot be distinguished from each other. In this situation, confusion by the recipient as to when the protection of the client-lawyer relationship applies is likely to be unavoidable. Therefore, this rule requires that the lawyer providing the nonlegal services adhere to all of the requirements of the Rules Regulating The Florida Bar.
In such a case, a lawyer will be responsible for assuring that both the lawyer’s conduct and, to the extent required elsewhere in these Rules Regulating The Florida Bar, that of nonlawyer employees comply in all respects with the Rules Regulating The Florida Bar. When a lawyer is obliged to accord the recipients of such nonlegal services the protection of those rules that apply to the client-lawyer relationship, the lawyer must take special care to heed the proscriptions of the Rules Regulating The Florida Bar addressing conflict of interest and to scrupulously adhere to the requirements of the rule relating to disclosure of confidential information. The promotion of the nonlegal services must also in all respects comply with the Rules Regulating The Florida Bar dealing with advertising and solicitation.
Subdivision (a) of this rule applies to the provision of nonlegal services by a lawyer even when the lawyer does, not personally provide any legal services to the person for whom the nonlegal services are performed if the person is also receiving legal services from another lawyer that are not distinct from the nonlegal services.
Avoiding misunderstanding when a lawyer directly provides nonlegal services that are distinct from legal services
Even when the lawyer believes that his or her provision of nonlegal services is distinct from any legal services provided to the recipient, there is still a risk-, that the recipient of the nonlegal services' will misunderstand the implications of receiving nonlegal services from a lawyer; the recipient might believe that the recipient is receiving the protection of a client-lawyer relationship. Where there is such a risk of misunderstanding, this rule requires that the -lawyer providing the nonlegal services adhere to all the Rules Regulating The *262 Florida Bar, unless exempted by • other provisions of this rule.
Avoiding misunderstanding when a lawyer is indirectly involved in the provision of nonlegal services
Nonlegal services also may be provided through an entity with which a lawyer is somehow affiliated, for example, as owner, employee, controlling party, or agent. In this situation, there is still a risk that the recipient of the nonlegal services might believe that the recipient is receiving the protection of a client-lawyer relationship. Where there is such a risk of misunderstanding, this rule requires that the lawyer involved with the entity providing nonlegal services adhere to all the Rules Regulating The Florida Bar, unless exempted by another provision of this rule.
Avoiding the application of subdivisions (b) and (c)
Subdivisions (b) and (c) specify that the Rules Regulating The Florida Bar apply to a lawyer who directly provides or is otherwise involved in the provision of nonlegal services if there is a risk that the recipient might believe that the recipient is receiving the protection of a client-lawyer relationship. Neither the Rules Regulating The Florida Bar nor subdivisions (b) or (c) will apply, however, if pursuant to subdivision (d), the lawyer takes reasonable efforts to avoid any misunderstanding by the recipient. In this respect, this rule is analogous to the rule regarding respect for rights of third persons.
In- taking the reasonable measures referred to in subdivision (d), the lawyer must communicate to the person receiving the nonlegal services that the relationship will not be a client-lawyer relationship. The communication should be made before entering into an agreement for the provision of nonlegal services, in a manner sufficient to assure that the person understands the significance of the communication, and preferably should be in writing.
The burden is upon the lawyer to show that the lawyer has taken reasonable measures under the circumstances to communicate the desired understanding. For instance, a sophisticated user of nonlegal services, such as a publicly held corporation, may require a lesser explanation than someone unaccustomed to making distinctions between legal services and nonlegal services, such as an individual seeking tax advice from a lawyer-accountant or investigative services in connection with a lawsuit.
The relationship between this rule and other Rules Regulating The Florida Bar
Even before this rule was adopted, a lawyer involved in the provision of nonlegal services was subject to those Rules Regulating The Florida Bar that apply generally. For example, another provision of the Rules Regulating The Florida Bar makes a lawyer responsible for fraud committed with respect to the provision of nonlegal services. Such a lawyer must also comply with the rule regulating business transactions with a client. Nothing in this rule (Responsibilities Regarding Nonlegal Services) is intended to suspend the effect of any otherwise applicable Rules Regulating The Florida Bar, such as the rules on personal conflicts of interest, on business transactions with clients, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.
In addition to the Rules Regulating The Florida Bar, principles of law external to the rules, for example, the law of principal and agent, may govern the legal duties owed by a lawyer to those receiving the nonlegal services.
4-7.2 COMMUNICATIONS CONCERNING A LAWYER’S SERVICES
The following shall apply to any communication conveying information about a lawyer’s or a law firm’s services:
*263 (a) Required Information.
(1) Name of Lawyer or Lawyer Referral Service. All advertisements and written communications pursuant to these rales shall include the name of at least 1 lawyer or the lawyer referral service responsible for their content.
(2) Location of Practice. All advertisements and written communications provided for under these rules shall disclose, by city or town, 1 or more bona fide office locations of the lawyer or lawyers who will actually perform the services advertised. If the office location is outside a city or town, the county .in which the office is located must be disclosed. A lawyer referral service shall disclose the geographic area in which the lawyer practices when a referral is made. For the purposes of this rale, a bona fide office is defined as a physical location maintained by the lawyer or law firm where the lawyer or law firm reasonably expects to furnish legal services in a substantial way on a regular and continuing basis. If an advertisement or written communication lists a telephone number in connection with a specified geographic area other than an area containing a bona fide office, appropriate qualifying language must appear in the advertisement.
(b) Prohibited Statements and Information.
(1) Statements About Legal Services. A lawyer shall not make or permit to be made a false, misleading, deceptive, or unfair communication about the lawyer or the lawyer’s services. A communication violates this rale if it:
(A) contains a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading;
(B) contains any reference to past successes or results obtained or is otherwise likely to create an unjustified expectation about results the lawyer can achieve except as allowed in the rale regulating information about a lawyer’s services provided upon request;
(C) átates or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law; .
(D) compares- the lawyer’s services with other lawyers’ services, unless the comparison can be factually substantiated; or
(E) contains a testimonial.
(2) Misleading or Deceptive Factual Statements. Any factual statement contained in any advertisement or written communication or any information furnished to a prospective client under , this rule shall not:
(A) be directly or impliedly false or misleading;
(B) be potentially false or misleading;
(C) fail to disclose material information necessary to prevent the information supplied from being actually or potentially false or misleading;
(D) be unsubstantiated in fact; or ■
(E) be unfair or deceptive.
(3) Descriptive Statements. A lawyer shall not make statements describing or characterizing the quality of the lawyer’s services in advertisements and written communications; provided that this provision shall not apply to information furnished to a prospective client at that person’s request or to information supplied to existing clients.
(4) Prohibited Visual and Verbal■ Portrayals. Visual or verbal descriptions, depictions, or portrayals of persons, things, or events must be objectively relevant to *264 the selection of an attorney and shall not be deceptive, misleading, or manipulative.
(5) Advertising Areas of Practice. A lawyer or law firm shall not advertise for legal employment in an area of practice in which the advertising lawyer or law firm does not currently practice law.
(6) Stating or Implying Florida Bar Approval. A lawyer or law firm shall not make any statement that directly or impliedly indicates that the communication has received any kind of approval from The Florida Bar.
(c) General Regulations Governing Content of Advertisements.
(1) Use of Illustrations. All illustrations used in advertisements shall present information that is directly related and objectively relevant to a viewer’s, possible need for legal services in a specific type of matter. Such illustrations shall be still pictures or drawings and shall contain no features that are likely to deceive, mislead, or confuse the viewer.
(2) Fields of Practice. Every advertisement and written communication that indicates 1 or more areas of law in which the lawyer or law firm practices shall conform to the requirements of subdivision (c)(3) of this rule.
(3) Communication of Fields of Practice. A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except that a lawyer who complies with the Florida certification plan as set forth in chapter 6, Rules Regulating The Florida Bar, or who is certified by an organization whose specialty certification program has been accredited by the American Bar Association may inform the public and other lawyers of the lawyer’s certified areas of legal practice and may state in communications to the public that the lawyer is a “specialist in (area of certification).”
(4) Disclosure of Liability For Expenses Other Than Fees. Every advertisement and written communication that contains information about the lawyer’s fee, including those that indicate no fee will be charged in the absence of a recovery, shall disclose whether the client will be liable for any expenses in addition to the fee.
(5) Period for Which Advertised Fee Must be Honored. • A lawyer who advertises a specific fee or range of fees for a particular service shall honor the advertised fee or range of fees for at least 90 days unless the advertisement specifies a shorter period; provided that, for advertisements in the yellow pages of telephone directories or other media not published more frequently than annually, the advertised fee or range of fees shall be honored for no less than 1 year following publication.
(6) Firm Name. A lawyer shall not advertise services under a name that violates the provisions of rule 4-7.10.
(7) Payment by Nonadvertising Lawyer. No lawyer shall, directly or indirectly, pay all or a part of the cost of an advertisement by a lawyer not in the same firm. Rule 4-1.5(f)(4)(D) (regarding the division of contingency fees) is not affected by this provision even though the lawyer covered by rule 4 — 1.5(f)(4)(D)(ii) advertises.
(8) Referrals to Another Lawyer. If the case or matter will be referred to another lawyer or law firm, the communication shall include a statement so advising the prospective client.
(89) Payment for Recommendations; Lawyer Referral Service Fees. A lawyer shall not give anything of value to a person for recommending the lawyer’s services, except that a lawyer may pay the reason *265 able cost of advertising or written or recorded communication permitted by these rules, may pay the usual charges of a lawyer referral service or other legal service organization, and may purchase a law practice in accordance with rule 4-1.17.
(@10) Language of Required Statements. Any words or statements required by this subchapter to appear in an advertisement or direct mail communication must appear in the same language in which the advertisement appears. If more than 1 language is used in an advertisement or direct mail communication, any words or statements required by this subchapter must appear in each language used in the advertisement or direct mail communication.
(4011) Permissible Content of Advertisements. The following information in advertisements and written communications shall be presumed not to violate the provisions of subdivision (b)(1) of this rule:
(A) subject to the requirements of this rule and rule 4 7.10, the name of the lawyer or law firm, a listing of lawyers associated with the firm, office locations and parking arrangements, disability accommodations, telephone numbers, Web site addresses, and electronic mail addresses, office and telephone service hours, and a designation such as “attorney” or “law firm”;
(B) date of admission to The Florida Bar and any other bars, current membership or positions held in The Florida Bar, its sections or committees, former membership or positions held in The Florida Bar, its sections or committees, together with dates of membership, former positions of employment held in the legal profession, together with dates the positions were held, years of experience practicing law, number of lawyers in the advertising law firm, and a listing of federal courts and jurisdictions other than Florida where the lawyer is licensed to practice;
(C) technical and professional licenses granted by the state or other recognized licensing authorities and educational degrees received, including dates and institutions;
(D) foreign language ability;
(E) fields, of law in which the lawyer practices, including official certification logos, subject to the requirements of subdivisions (c)(2) and (c)(3) of this rule;
(F) prepaid or group legal service plans in which the lawyer participates;
(G) acceptance of credit cards;
(H) fee for initial consultation and fee schedule, subject to the requirements of subdivisions (c)(4) and (c)(5) of this rule;
(I) a listing of the name and geographic location of a lawyer or law firm as a sponsor of a public service announcement or charitable, civic, or community program or event;
(J) common salutary language such as “best wishes,”y “good luck,”y “happy holidays/’? or “pleased to announce”; and
(K) an illustration of the scales of justice not deceptively similar to official certification logos or The Florida Bar logo, a gavel, or traditional renditions of Lady Justice, or a photograph of the head and shoulders of the lawyer or lawyers who are members of or employed by the firm against a plain background consisting of a single solid color or a plain unadorned set of law books; and
(L)a lawyer referral service may advertise its name, location, telephone number, the referral fee charged, its hours of operation, the process by which referrals are made, the areas of law in which referrals are offered, the geographic area in which the lawyers practice to whom those responding to the advertisement will be re *266 ferred, and, if applicable, its nonprofit status, its status as a lawyer referral service approved by The Florida Bar, and the logo of its sponsoring bar association.
Comment
This rule governs all communications about a lawyer’s services, including advertising permitted by this subchapter. Whatever means are used to make known a lawyer’s services, statements about them must be truthful. This precludes any material misrepresentation or misleading omission, such as where a lawyer states or implies certification or recognition as a specialist other than in accordance with this rule, where a lawyer implies that any court, tribunal, or other public body or official can be improperly influenced, or where a lawyer advertises a particular fee or a contingency fee without disclosing whether the client will also be liable for costs. Another example of a misleading omission is an advertisement for a law firm that states that all the firm’s lawyers are juris doctors but does not disclose that a juris doctorate is a law degree rather than a medical degree of some sort and that virtually any law firm in the United States can make the same claim. Although this rule permits lawyers to list the jurisdictions and courts to which they are admitted, it also would be misleading for a lawyer who does not list other jurisdictions or courts to state that the lawyer is a member of The Florida Bar. Standing by itself, that otherwise truthful statement implies falsely that the lawyer possesses a qualification not common to virtually all lawyers practicing in Florida. The latter 2 examples of misleading omissions also are examples of unfair advertising.
Prohibited information
The prohibition in subdivision (b)(1)(B) of statements that may create “unjustified expectations” precludes advertisements about results obtained on behalf of a client, such as the amount of a damage award or the lawyer’s record in obtaining favorable verdicts, and advertisements containing client endorsements or testimonials. Such information may create the unjustified expectation that similar results can be obtained for others without reference to the specific factual and legal circumstances.
The prohibition in subdivision (b)(1)(D) of comparisons that cannot be factually substantiated would preclude a lawyer from representing that the lawyer or the lawyer’s law firm is “the best,” “one of the best,” or “one of the most experienced” in a field of law.
The prohibition in subdivision (b)(1)(E) precludes endorsements or testimonials, whether from clients or anyone else, because they are inherently misleading to a person untrained in the law. Potential clients are likely to infer from the testimonial that the lawyer will reach similar results in future cases. Because the lawyer cannot directly make this assertion, the lawyer is not permitted to indirectly make that assertion through the use of testimonials.
Subdivision (b)(4) prohibits visual or verbal descriptions, depictions, or portrayals in any advertisement which create suspense, or contain exaggerations or appeals to the emotions, call for legal services, or create consumer problems through characterization and dialogue ending with the lawyer solving the problem. Illustrations permitted under Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio, 471 U.S. 626[, 105 S.Ct. 2265, 85 L.Ed.2d 652] (1985), are informational and not misleading, and are therefore permissible. As an example, a drawing of a fist, to suggest the lawyer’s ability to achieve results, would be barred. Examples of permissible illustrations would include a graphic rendering of the scales of justice to indicate that the advertising attorney *267 practices law, a picture of the lawyer, or a map of the office location.
Communication of fields of practice
This rule permits a lawyer or law firm to indicate areas of practice in communications about the lawyer’s or law firm’s services, such as in a telephone directory or other advertising, provided the advertising lawyer or law firm actually practices in those areas of law at the time the advertisement is disseminated. If a lawyer practices only'in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, no lawyer who is not certified by The Florida Bar or an organization having substantially the same standards may be described to the public as a “specialist” or as “specializing.”
Paying others to recommend a lawyer
A lawyer is allowed to pay for advertising permitted by this rule and for the purchase of a law practice in accordance with the provisions of rule 4-1.17, but otherwise is not permitted to pay or provide other tangible benefits to another person for procuring professional work. However, a legal aid agency or prepaid legal services plan may pay to advertise legal services provided under its auspices. Likewise, a lawyer may participate in lawyer referral programs and pay the usual fees charged by such programs, subject, however, to the limitations imposed by rule 4-7.11. Subdivision (c)(89) does not prohibit paying regular compensation to an assistant, such as a secretary or advertising consultant, to prepare communications permitted by this rule.
RULE 4-7.3 ADVERTISEMENTS IN THE PUBLIC PRINT MEDIA
(a) Generally. Advertisements disseminated in the public print media are subject to the requirements of rule 4-7.2.
(b) Disclosure Statement. Except as otherwise provided in this subdivision, all advertisements other than lawyer referral service advertisements shall contain the following disclosure: “The hiring of a lawyer is an important decision that should not be based solely upon advertisements. Before you decide, ask us to send you free written information about our qualifications and experience.” Lawyer referral service advertisements shall contain the following disclosure: “The hiring of a lawyer is an important decision. Before you decide to hire the lawyer to whom you are referred, ask that lawyer for written information about that lawyer’s qualifications and experience.” Outdoor advertisements may contain, in lieu of the above disclosure, the following abbreviated version: “Before choosing a lawyer, ask for written information about the lawyer’s legal qualifications and experience.” Disclosure statements must appear in type that is clearly legible and is no smaller than one-fourth of the size of the largest type otherwise appearing in the advertisement. These disclosures, however, need not appear in advertisements in the public print media that contain no illustrations and no information other than that listed in subdivision (c)(4011) of rule 4-7.2, or written communications sent in compliance with rule 4-7.4. ■
Comment
The disclosure required by this rule is designed to encourage the informed selection of a lawyer. A prospective client is entitled to know the experience and qualifications of any lawyer seeking to represent the prospective client. The required disclosure would be ineffective if it appeared in an advertisement so briefly or minutely as to be overlooked or ignored. Thus the type size to be used for the disclosure is specified to ensure that the disclosure will be conspicuous.
*268 RULE 4-7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
(a) Solicitation. Except as provided in subdivision (b) of this rule, a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer’s doing so is the lawyer’s pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit in the lawyer’s behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this rule. The term “solicit” includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes (i) any written form of communication directed to a specific recipient and not meeting the requirements of subdivision (b) of this rule, and (ii) any electronic mail communication directed to a specific recipient and not meeting the requirements of subdivision (c) of rule 4-7.6.
(b) Written Communication.
(1) A lawyer shall not send, or knowingly permit to be sent, on the lawyer’s behalf or on behalf of the lawyer’s firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer’s firm, a written communication directly or indirectly to a prospective, client for the purpose of obtaining professional employment if:
(A)the written communication concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication is addressed or a relative of that person, unless the accident or disaster occurred more than 30 days prior to the mailing of the communication;
(B) the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter;
(C) it has been made known to the lawyer that the person does not want to receive such communications from the lawyer;
(D) the communication involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence;
(E) the communication contains a false, fraudulent, misleading, deceptive, or unfair statement or claim or is improper under subdivision (b)(1) of rule 4-7.2; or
(F) the lawyer knows or reasonably should know that the physical, emotional, or mental state of the person makes it unlikely that the person would exercise reasonable judgment in employing a lawyer.
(2) Written communications to prospective clients for the purpose of obtaining professional employment are subject to the following requirements:
(A) Written communications to a prospective client are subject to the requirements of rule 4-7.2.
(B) The first page of such written communications shall be plainly marked “advertisement” in red ink, and the lower left corner of the face of the envelope containing a written communication likewise shall carry a prominent, red “advertisement” mark. If the written communication is in the form of a self-mailing brochure or pamphlet, the “advertisement” mark in red ink shall appear on the address panel of the brochure or pamphlet and on the inside of the brochure or pamphlet. Brochures solicited by clients or prospective clients need not contain the “advertisement” mark.
*269 (C) A copy of each such written communication and a sample of the envelopes in which the communications are enclosed shall be filed with the standing committee on advertising either prior to or concurrently with the mailing of the communication to a prospective client, as provided in rale 4-7.7. The lawyer also shall retain a copy of each written communication for 3 years. If identical written communications are sent to 2 or more prospective clients, the lawyer may comply with this requirement by filing 1 of the identical written communications and retaining for 3 years a single copy together with a list of the names and addresses of persons to whom the written communication was sent.
(D) Written communications mailed to prospective clients shall be sent only by regular U.S. mail, not by registered mail or other forms of restricted delivery.
(E)-No-referenee-shaIl be made-in the communication — to—the.communication’s having received any-kind of approval from The Florida-Baiu
(EE) Every written communication shall be accompanied by a written statement detailing the background, training and experience of the lawyer or law firm. This statement must include information about the specific experience of the advertising lawyer or law firm in the area or areas of law for which professional employment is sought. Every written communication disseminated by a lawyer referral service shall be accompanied by a written statement detailing the background, training, and experience of each lawyer to whom the recipient may be referred.
(GF) If a contract for representation is mailed with the written communication, the top of each page of the contract shall be marked “SAMPLE” in red ink in a type size 1 size larger than the largest type used in the contract and the words “DO NOT SIGN” shall appear on the client signature line...
(EG) The first sentence of any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall be: “If you have already retained a lawyer for this matter, please disregard this letter.”
(IH) Written communications shall be on letter-sized paper rather than legal-sized paper and shall not be made to resemble legal pleadings or other legal documents. This provision does not preclude the mailing of brochures and pamphlets.
(JI) If a lawyer other than the lawyer whose name or signature appears on the communication will actually handle the case or matter, or if the case-or matter will be referred to another lawyer or law firm, any written communication concerning a specific matter shall include a statement so advising the client.
(KJ) Any written communication prompted by a specific occurrence involving or affecting the intended recipient of the communication or a family member shall disclose how the lawyer obtained the information prompting the communication. The disclosure required by this rule shall be specific enough to help the recipient understand the extent of the lawyer’s knowledge regarding the recipient’s particular situation.
(LK) A written communication seeking employment by a specific prospective client in a specific matter shall not reveal on the envelope, or on the outside of a self-mailing brochure or pamphlet, the nature of the client’s legal problem.
Comment
There is a potential for abuse inherent in direct solicitation by a lawyer of prospective clients known to need legal services. It subjects the person to the pri *270 vate importuning of a trained advocate, in a direct interpersonal encounter. A prospective client often feels overwhelmed by the situation giving rise to the need for legal services and may have an impaired capacity for.reason, judgment, and protective self-interest. Furthermore, the lawyer seeking the retainer is faced with a conflict stemming from the lawyer’s own interest, which may color the advice and representation offered the vulnerable prospect.
The situation is therefore fraught with the possibility of undue influence, intimidation, and overreaching. This potential for abuse inherent in direct solicitation of prospective clients justifies the 30-day restriction, particularly since lawyer advertising permitted under these rules offers an alternative means of communicating necessary information to those who may be in need of legal services.
Advertising makes it possible for a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and' law firms, without subjecting the prospective client to direct personal persuasion that may overwhelm the client’s judgment.
The use of general advertising to transmit information from lawyer to prospective client, rather than direct private contact, will help to assure that the information flows cleanly as well as freely. Advertising is out in public view, thus subject to scrutiny by those who know the lawyer. This informal review is itself likely to help guard against statements and claims that might constitute false or misleading communications. Direct private communications from a lawyer to a prospective client are not subject to such third-party scrutiny and consequently are much more likely to approach (and perhaps cross) the dividing line between accurate representations and those that are false and misleading.
Direct written communications seeking employment by specific prospective clients generally present less potential for abuse or overreaching than in-person solicitation and are therefore not prohibited for most types of legal matters, but are subject to reasonable restrictions, as set forth in this rule, designed to minimize or preclude abuse and overreaching and to ensure lawyer accountability if such should occur. This rule allows targeted mail solicitation of potential plaintiffs or claimants in personal injury and wrongful death causes of action or other causes of action that relate to an accident, disaster, death, or injury, but only if mailed at least 30 days after the incident. This restriction is reasonably required by the sensitized state of the potential clients, who may be either injured or grieving over the loss of a family member, and the abuses that experience has shown exist in this type of solicitation.
Letters of solicitation and their envelopes must be clearly marked “advertisement.” This will avoid the recipient’s perceiving that there is a need to open the envelope because it is from a lawyer or law firm, only to find the recipient is being solicited for legal services. With the envelope and letter marked “advertisement,” the recipient can choose to read the solicitation, or not to read it, without fear of legal repercussions.
In addition, the lawyer or law firm should reveal the source of information used to determine that the recipient has a potential legal problem. Disclosure of the information source will help the recipient to understand the extent of. knowledge the lawyer or law firm has regarding the recipient’s particular situation and will avoid misleading the recipient into believing that the lawyer has particularized knowledge about the recipient’s matter if the lawyer does not.
*271 This rule would not prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for its members, insureds, beneficiaries, or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement that the lawyer or the lawyer’s law firm is willing to offer. This form of communication is not directed to a specific prospective client known to need legal services related to a particular matter. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity that the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under other rules in this subchapter.
RULE 4-7.5 ADVERTISEMENTS IN THE ELECTRONIC MEDIA OTHER THAN COMPUTER-ACCESSED COMMUNICATIONS
(a) Generally. With the exception of computer-based advertisements (which are subject to the special requirements set forth in rule 4-7.6), all advertisements in the electronic media, including but not limited to television and radio, are subject to the requirements of rule 4-7.2.
(b) Appearance on Television or Radio. Advertisements on the electronic media such as television and radio may contain, but are not necessarily limited to containing, some or all of the information listed in rule 4-7.2(e)(4©ll). The information shall be articulated by a single human voice, or on-screen text, with no background sound other than instrumental music. No person’s voice or image, other than that of a lawyer who is a member of the firm whose services are advertised, may be used in a television or radio advertisement. Visual images appearing in a television advertisement shall be limited to the advertising lawyer in front of a background consisting of a single solid color, a set of law books in an unadorned bookcase, or th,e lawyer’s own office (with no other office.personnel shown). A limited exception applies to lawyer referral service advertisements permitted under rule 4-7.11, insofar as a nonattorney spokesperson may speak or appear on behalf of the participating attorneys in television or radio advertisements. If such a spokesperson is used, the spokesperson shall provide a spoken disclosure identifying herself or himself as a spokesperson and disclosing that- she or he is not an attorney. Television and radio advertisements by lawyer referral services are otherwise subject to the requirements of this rule.
Comment
Television is now one of the most powerful media for conveying information to the public; a blanket prohibition against television advertising, therefore, would impede the flow of information about legal services to many sectors of the public. However, the unique characteristics of electronic media, including the pervasiveness of television and radio, the ease with which these media abe abused, and the passiveness of the viewer or listener, make the electronic media especially subject to regulation in the public interest. Therefore, greater restrictions on the manner of television and radio advertising are justified than might be appropriate for advertisements in the other media. To prevent abuses, including potential interferences with the fair and proper administration of justice and the creation of incorrect public perceptions or assumptions about the manner in which our legal system works, and to promote *272 the public's confidence in the legal profession and this country’s system of justice while not interfering with the free flow of useful information to prospective users of legal services, it is necessary also to restrict the techniques used in television and radio advertising.
This rule is designed to ensure that the advertising is not misleading and does not create unreasonable or unrealistic expectations about the results the lawyer maybe able to obtain in any particular case, and to encourage the provision of useful information to the public about the availability and terms of legal services. Thus, the rule allows lawyer advertisements in which a lawyer who is a member of the advertising firm personally appears to speak regarding the legal services the lawyer or law firm is available to perform, the fees to be charged for such services, and the background and experience of the lawyer or law firm. A firm partner or shareholder, of course, is a “member” of a law firm within the intent of the rule; likewise, a lawyer who is a law firm associate as defined in The Florida Bar v. Fetterman, 439 So.2d 835 (Fla.1983) is a firm “member.” Whether other lawyers are “members” of a firm for purposes of this rule must be evaluated in light of criteria that include whether the lawyer’s practice is physically located at the firm and whether the lawyer practices solely through the firm. There should be a presumption that lawyers other than partners, shareholders, or associates are not “members” of a law firm for purposes of this rule.
RULE 4-7.6 COMPUTER ACCESSED COMMUNICATIONS
(a) Definition. For purposes of this subchapter, “computer-accessed communications” are defined as information regarding a lawyer’s or law firm’s services that is read, viewed, or heard directly through the use of a computer. Computer-accessed communications include, but are not limited to, Internet presences such as home pages or World Wide Web sites, unsolicited electronic mail communications, and information concerning a lawyer’s or law firm’s services that appears on World Wide Web search engine screens and elsewhere.
(b) Internet Presence. All World Wide Web sites and home pages accessed via the Internet that are controlled or sponsored by a lawyer or law firm and that contain information concerning the lawyer’s or law firm’s services:
(1) shall disclose all jurisdictions in which the lawyer or members of the law firm are licensed to practice law;
(2) shall disclose 1 or more bona fide office locations of the lawyer or law firm, in accordance with subdivision (a)(2) of rule 4-7.2; and
(3) are considered to be information provided upon request and, therefore, are otherwise governed by the requirements of rule 4-7.9.
(c) Electronic Mail Communications. A lawyer shall not send, or knowingly permit to be sent, on the lawyer’s behalf or on behalf of the lawyer’s firm or partner, an associate, or any other lawyer affiliated with the lawyer or the lawyer’s firm, an unsolicited electronic mail communication directly or indirectly to a prospective client for the purpose of obtaining professional employment unless:
(1) the requirements of subdivisions (b)(1), (b)(2)(A), (b)(2)(E), (b)(2)(F), (b)(2)(G), (b)(2)(H), (b)(2)(JI), and (b)(2)(KJ) of rule 4-7.4 are met;
(2) the communication discloses 1 or more bona fide office locations of the lawyer or lawyers who will actually perform the services advertised, in accordance with subdivision (a)(2) of rule 4-7.2; and
*273 (3) the subject line of the communication states “legal advertisement.”
(d) Advertisements. All computer-accessed communications concerning a lawyer’s or law firm’s services, other than those subject to subdivisions (b) and (c) of this rule, are subject to the requirements of rale 4-7.2.
Comment
Advances in telecommunications and computer technology allow lawyers to communicate with other lawyers, clients, prospective clients, and others in increasingly quicker and more efficient ways. Regardless of the particular technology used, however, a lawyer’s communications with prospective clients for the purpose of obtaining professional employment must meet standards designed to protect the public from false, deceptive, misleading, or confusing messages about lawyers or the legal system and to encourage the free flow of useful legal-related information to the public.
The specific regulations that govern computer-accessed communications differ according to the particular variety of communication employed. For example, a lawyer’s Internet web site is accessed by the viewer upon the viewer’s initiative and, accordingly, the standards governing such communications correspond to the rales applicable to information provided to a prospective client at the prospective Ghent’s request.
In contrast, unsolicited electronic mail messages from lawyers to prospective clients are functionally comparable to direct mail 'communications and thus are governed by similar rules. Additionally, communications advertising or promoting a lawyer’s services that are posted on search engine screens or elsewhere by the lawyer, or at the lawyer’s behest, with the hope that they will be seen by prospective clients are simply a form of lawyer advertising and are treated as such by the rules.
This rule is not triggered merely because someone other than the lawyer gratuitously links to, or comments on, a lawyer’s Internet web site.
RULE 4-7.7 EVALUATION OF ADVERTISEMENTS
(a) Filing and Advisory Opinion. Subject to the exemptions stated in rule 4-7.8, any lawyer who advertises services through any public media or through written communications sent in compliance with rule 4-7.4 or 4-7.6(c) shall file a copy of each such advertisement with the standing committee on advertising for evaluation of compliance with these rules. The copy shall be filed either prior to or concurrently with the lawyer’s first dissemination of the advertisement or written communication and shall be accompanied by the information and fee specified in subdivision (b) of this rale. A lawyer may obtain an advisory opinion concerning the compliance of a contemplated advertisement or written communication in advance of disseminating the advertisement or communication by submitting the material and fee specified in subdivision (b) of this rule to the standing committee on advertising at least 15 days prior to such dissemination. If the committee finds that the advertisement complies with these rales, the lawyer’s voluntary submission shall be deemed to satisfy the filing requirement set forth in this rale.
(b) Contents of Filing. A filing with the committee as required or permitted by subdivision (a) shall consist of:
(1) a copy of the advertisement or communication in the form or forms in which it is to be disseminated (e.g., videotapes, audiotapes, print media, photographs of outdoor advertising);
*274 (2) a transcript, if the advertisement or communication is on videotape or audiotape;
(3) a sample envelope in which the written communication will be enclosed, if the communication is to be mailed;
(4) a statement listing all media in which the advertisement or communication will appear, the anticipated frequency of use of the advertisement or communication in each medium in which it will appear, and the anticipated time period during which the advertisement or communication will be used; and
(5) a fee paid to The Florida Bar, in an amount of $100 for submissions timely filed as provided in subdivision (a), or $250 for submissions not timely filed. This fee shall be used to offset the cost of evaluation and review of advertisements submitted under these rules and the cost of enforcing these rules.
(c) Evaluation of Advertisements. The committee shall evaluate all advertisements and written communications filed with it pursuant to this rule for compliance with the applicable rules set forth in this subchapter 4-7. The committee shall complete its evaluation within 15 days of receipt of a filing unless the committee determines that there is reasonable doubt that the advertisement or written communication is in compliance with the rules and that further examination is warranted but cannot. be completed within the 15-day period, and so advises the filer within the 15-day period. In the latter event, the committee shall complete its review as promptly as the circumstances reasonably allow. If the committee does not send any communication to the filer within 15 days, the advertisement will be deemed approved.
(d) Substantiating Information. If requested to do so by the committee, the filing lawyer shall submit information to substantiate representations made or implied in that lawyer’s advertisement or written communication.
(e) Notice of Noncompliance; Effect of Continued Use of Advertisement. When the committee determines that an advertisement or written communication is not in compliance with the applicable rules, the committee shall advise the lawyer that dissemination ■ or continued dissemination of the advertisement or written communication may result in professional discipline.
(f) Committee Determination Not Binding; Evidence. A finding by the committee of either compliance or noncompliance shall not be binding in a grievance proceeding, but may be offered as evidence.
(g) Change of Circumstances; Refiling Requirement. If 'a change of circumstances occurring subsequent to the committee’s evaluation of an advertisement or written communication raises a substantial possibility that the advertisement or communication has become false or misleading as a result of the change in circumstances, the lawyer shall promptly refile the advertisement or a modified advertisement with the committee along with an explanation of the change in circumstances and an additional fee set by the board of governors but not exceeding $100.
(h) Maintaining Copies of Advertisements. A copy or recording of an advertisement or written or recorded communication shall be submitted to the standing committee on advertising in accordance with the requirements of rule 4-7.7, and the lawyer shall retain a copy or recording for 3 years after its last dissemination along with a record of when and where it was used.
*275 Comment
This rule has a dual purpose: to enhance the court’s and the bar’s ability to monitor advertising practices for the protection of the public and to assist members of the bar to conform their advertisements to the requirements of these rules. This rule gives lawyers the option of submitting their advertisements to the committee for review prior to first use or submitting their advertisements at the time of first use. In either event, the committee will advise the filing lawyer in writing whether the advertisement appears to comply with the rules. The committee’s opinion will be advisory only, but may be considered as evidence of a good faith effort to comply ■with these rules. A lawyer who wishes to be able to rely on the committee’s opinion as demonstrating the lawyer’s good faith effort to comply with these rules has the responsibility of supplying the committee with all information material to a determination of whether an advertisement is false or misleading.
RULE 4-7.8 EXEMPTIONS FROM THE FILING AND REVIEW REQUIREMENT
The following are exempt from the filing requirements of rule 4-7.7:
(a) Any advertisement in any of the public media, including the yellow pages of telephone directories, that contains no illustrations and no information other than that set forth in subdivision (c)(i011) of rule 4-7.2. This exemption extends to television advertisements only if the visual display featured in such advertisements is limited to the words spoken by the announcer.
(b) A brief announcement in any of the public media that identifies a lawyer or law firm as a contributor to a specified charity or as a sponsor of a public service announcement or a specified charitable, community, or public interest program, activity, or event, provided that the announcement contains no information about the lawyer or law firm other than name, the city where the law offices are located, and the fact of the sponsorship or contribution. In determining whether an announcement is a public .service announcement for purposes of this rule and subdivision (c)(4Qll)(I) of rule 4-7.2, the following are criteria that may be considered:
(1) whether the content of the announcement appears to serve the particular interests of the lawyer or law firm as much as or more than the interests of the public;
(2) whether the announcement contains information concerning the lawyer’s or law firm’s area of practice, legal background, or experience;
(3) whether the announcement contains the address or telephone number of the lawyer or law firm;
(4) whether the announcement concerns a legal subject;
(5) whether the announcement contains legal advice; and
(6) whether the lawyer or law film paid to have the announcement published.
(c) A listing or entry in a law list or bar publication.
(d) A communication mailed only to existing clients, former clients, or other lawyers.
(e) Any. written communications requested by a prospective client.
(f) Professional announcement cards stating new or changed associations, new offices,-and similar .changes relating to a lawyer or law firm, and that are mailed only to other lawyers, relatives, close personal friends, and existing or former clients.
*276 (g) Computer-accessed communications as described in subdivision (b) of rule 4-7.6.
Comment
In The Florida Bar v. Doe, 634 So.2d 160 (Fla.1994), the court recognized the need for specific guidelines to aid lawyers and the bar in determining whether a particular announcement in the public media is a public service announcement as contemplated in this rule and rule 4-7.2. Subdivisions (b)(l)-(6) of this rule respond to the court’s concern by setting forth criteria that, while not.-intended to be exclusive, provide the needed guidance. With the exception of subdivision (b)(3), these criteria are based on factors considered by the court in Doe.
RULE 4-7.10 FIRM NAMES ' AND LETTERHEAD
(a) False, Misleading, or Deceptive. A lawyer shall not use a firm name, letterhead, or other professional designation that violates subdivision (b)(1) of rule 4-7.2.
(b) Trade Names. A lawyer may practice under a trade name if the name is not deceptive and does not imply a connection with a government agency or with a public or charitable legal services organization, does not imply that the firm is something other than a private law firm, and is not otherwise in violation of subdivision (b)(1) of rule 4-7.2. A lawyer in private practice may use the term “legal clinic” or “legal services” in conjunction with the lawyer’s own name if the lawyer’s practice is devoted to providing routine legal services for fees that are lower than the prevailing rate in the community for those services.
(c) Advertising Under Trade Name. A lawyer shall not advertise under a trade or fictitious name, except that a lawyer who actually practices under a trade name as authorized by subdivision (b) may use that name in advertisements. A lawyer who advertises under a trade or fictitious name shall be in violation of this rule unless the same name is the law firm name that appears on the lawyer’s .letterhead, business cards, office sign, and fee contracts, and appears with the lawyer’s signature on pleadings and other legal documents.
(d) Law Firm with Offices in More Than 1 Jurisdiction. A law firm with offices in more than 1 jurisdiction may use the same name in each jurisdiction, but identification of the lawyers in an office of the firm shall indicate the jurisdictional limitations on those not licensed to practice in the jurisdiction where the office is located.
(e) Name of Public Officer in Firm Name. The name of a lawyer holding a public office shall not be used in the name of. a law firm, or in communications on its behalf, during any substantial period in which the lawyer is not actively and regularly practicing with the firm.
(f) Partnerships and Authorized Business Entities. Lawyers may state or imply that they practice in a partnership or authorized business entity only when that is the fact.
Comment
A firm may be designated by the names of all or some of its members, by the names of deceased members where there has been a continuing succession in the firm’s identity, or by a trade name such as “Family Legal Clinic.” Although the United States Supreme Court has held that legislation may prohibit the use of trade names in professional practice, use of such names in law practice is acceptable so long as it is not misleading. If a private firm uses a trade name that includes a geographical name such as “Springfield Legal Clinic,” an express disclaimer that it is a public legal aid agency may be required to *277 avoid a misleading implication. It may be observed that any firm name including the name of a deceased partner is, strictly speaking, a trade name. The use of such names to designate law firms has proven a useful means of identification. However, it is misleading to use the name of a lawyer not associated with the firm or a predecessor of the firm.
Subdivision (a) precludes use in a law firm name of terms that imply that the firm is something other than a private law firm. Two examples of such terms are “academy” and “institute.” Subdivision (b) precludes use of a trade or fictitious name suggesting that the' firm is named for a person when in fact such a person does not exist or is not associated with the firm. An example of such an improper name is “A. Aaron Able.” Although not prohibited per se, the terms “legal clinic” and “legal services” would be misleading if used by a law firm that did not devote its practice to providing routine legal services at prices below those prevailing in the community for like services.
Subdivision (c) of this rule precludes a lawyer from advertising under a nonsense name designed to obtain an advantageous position for the lawyer in alphabetical directory listings unless the lawyer actually practices under that nonsense name. Advertising under a law firm name that differs from the firm name under which the lawyer actually practices violates both this rule and subdivision (b)(1) of rule 4-7.2.
With regard to subdivision (df), lawyers sharing office facilities, but who are not in fact partners, may not denominate themselves as, for example, “Smith and Jones,” for that title suggests partnership in the practice of law.
RULE 5-1.1 TRUST ACCOUNTS
(a)Nature of Money or Property Entrusted to Attorney.
(1) Trust Account Required; Comming-linp Prohibited. A lawyer shall hold in trust, separate from the lawyer’s own property, funds and property of clients or third persons that are in a lawyer’s possession in connection with a representation. All funds, including advances for fees, costs, and expenses, shall be kept in a separate bank or savings and loan association account maintained in the state where the lawyer’s office is situated or elsewhere with the consent of the client or third person and clearly labeled and designated as a trust account.
(2) Compliance With Client Directives. Trust funds may be separately held and maintained other than in a bank or savings and loan association account if the lawyer receives written permission from the client to do so and provided that -written permission is received before maintaining the funds other than in a separate account.
(3) Safe Deposit Boxes. If a member of the bar uses a safe deposit box to store trust funds or property, the member shall advise the institution in which the deposit box is located that it may include property of clients or third persons.
(b) Trust Accounts — Required.—Any bank or savings a-nd-Ioan association account — maintained by a member-of-The Florida Bar to comply with ■ rule 4-1.15, Rules of Professional CondueV-is-and shall be clearly labeled and designated as a trust account. — An-y-safe deposit box used in-eonnection with the prac-tiee-of-law- in-Florida maintained-by a member of The Florida Bar to comply with- rule 4-1.15 shall be-located-in.this state unless the client-otherwise ■ consents in writing; — A member — of-The Florida Bar shall advise an-y-institution in which such deposit box is located that it may include — property- of clients.
(c) Trust Accounts as Official Records. A member ef-4-he-Florida-Bar shall *278 preserve or cause to be preserved the records-of all bank and savings-and-loaa association accounts or other records pertaining-to the funds or -property of a client or a third party-maintained in- compliance with'rule 4-1.15 for a period-o£-not-less than-6-years subsequent to the final conclusion of the representation of ■ a-■■Client relative to such-funds or property — Such records shall include checkbooks,' cancelled' checks, check-stubs, vouchers, ledgers and j ournalsj closing ■ statements, ■ accountings or other-statements of disbursements-rendered to clients or third parties with regard to trust-funds, or similar equivalent records clearly^-and expressly — reflecting the date,' amouni^-source, and reason for all receipts,-withdrawals, deliveries; — and disbursements of the funds or property-of a client or third-party. — Such records shall be kept pursuant-feo these rules as a specific prerequisite , to the right to receive, deliver, and disburse-funds or property-of-ti client-or- third party and to have a public aspect-relating to the protection of clients and-to-fítness of a-rnember-of The Florida Bar to practice-law^ — In any instance-of-an alleged-violation by a member of The Florida-Bar-of this rule or of any of the Rules of Professional Conduct, such-records insofar as they^ may-relate in any-way-to-the transaction, occurrence, or client in question shall be-produced by the members-of The-Florida-Bar-fer inspection, audit, and copying-by a designated representative-of The Florida Bar-upon the direction-of-thls eourVa-grievance committee, the board' of 'governors if acting pursuant — to—rule 3-7.5(b), or a referee-. — Such records or-cop-les^thereof shall be admissible in evidence in any proceeding-under this rule; provided-notice of such intended use shall be given-to any-client-involved, if-practicable, unless such client-is already aware-of-sueh intended use, and upon good cause shown by such client-the- admission of-the-sams shall- be under-such conditions as shall be reasonably calculated thereafter to protect the-confidences of such client in the event that the proceedings otherwise become public records. — Permissible means of protection shall-not-prejudice the-respondent and- may include but are not limited -to excision, in camera-production, retention-in sealed envelopesj-or-similar devices. — Failure to maintain " Such records or to produce them upon such ■ direction shall constitute ground for disciplinary action under this rule without-regard- to any other matter. The-cost of any audit or investigation necessitated by such failure may be taxed against a respondent.
(d) Trust Accounting, — Minimum trust accounting-records-shall be maintained and minimum — trust—accounting—procedures must be followed-by all attorneys practicing..-in — Florida who receive — or—disburse trust-money or property.
(b) Application of Trust Funds or Property to Specific Purpose. Money or other property entrusted to an attorney for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be deemed a conversion.
(c) Liens Permitted. This is noU-to subchapter does not preclude the retention of money or other property upon which the lawyer has a valid lien for services or-tonor does it preclude the payment of agreed fees from the proceeds of transactions or collection.
(d) Controversies as to Amount of Fees. Controversies as to the amount of fees are not grounds for disciplinary proceedings unless the amount demanded is *279 clearly excessive, extortionate, or fraudulent. In a controversy alleging a clearly excessive, extortionate, or fraudulent fee, announced willingness of an attorney to submit a dispute as to the amount of a fee to a competent tribunal for determination may be considered in any determination as to intent or in mitigation of discipline; provided, such willingness shall not preclude admission of any other relevant admissible evidence relating to such controversy, including evidence as to the withholding of funds or property of the chent, or to other injury to the client occasioned by such controversy.
(e) Notice of Receipt of Trust Funds; Delivery; Accounting. Upon receiving funds or other property in which a chent or third person has an interest, a lawyer shall promptly notify the chent or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the chent, a lawyer shall promptly deliver to the chent or third person any funds or other property that the chent or third person is entitled to receive and, upon request by the chent or third person, shah promptly render a full accounting regarding such property.
(f) Disputed Ownership of Trust Funds. When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be treated by the lawyer as trust property, but the portion belonging to the lawyer or law firm shall be withdrawn within a reasonable time after it becomes due unless the right of the lawyer or law firm to receive it is disputed, in which event the portion in dispute shah be kept separate by the lawyer until the dispute is resolved.
(eg) Interest on Trust Accounts (IOTA) Program.
(1) Definitions. As used herein, the term:
(A) “nominal or short term” describes funds of a chent or third person that, pursuant to subdivision (3), below, the lawyer has determined cannot practicably be invested for the benefit of the chent or third person;
(B) “Foundation” means The Florida Bar Foundation, Inc.;
(C) “IQTA account” means an. interest or dividend-bearing trust account ben-efitting The Florida Bar Foundation established in an eligible institution for the deposit of nominal or short-term funds of clients or third persons;
(D) “Eligible Institution” means any bank or savings and loan association authorized by federal or state laws to do business in Florida and insured by the Federal Savings and Loan Insurance Corporation, or any successor insurance corporation(s) established by federal or state laws, or any open-end investment company registered with the Securities and Exchange Commission and authorized by federal or state laws to do business in Florida, all of which must meet the requirements set out in subdivision (5), below.
(E) “Interest or dividend-bearing trust account” means a federally insured checking account or investment product, including a daily financial institution repurchase agreement or a money market fund. A daily financial institution repurchase agreement must be fully collateral-ized by,-and an open-end money market fund must consist solely of, United States Government Securities. A daily financial institution repurchase agreement may be established only with an eligible institution that is deemed to be “well capitalized” or “adequately capitalized” as defined by applicable federal statutes and regulations. An open-end money market fund must hold itself out as a money market fund as-defined by apphcable federal statutes and *280 regulations under the Investment Company Act of 1940, and have total assets of at least $250,000,000. The funds covered by this rule shall be subject, to withdrawal upon request and without delay.
(2) Required, Participation. All nominal or short-term funds belonging to clients or third persons that are placed in trust with any member of The Florida Bar practicing law from an office or other business location within the state of Florida shall be deposited into one or more IOTA accounts, except as provided in rule 4-Í45elsewhere in these rules with respect to funds maintained other than in a bank . account, or as provided in rule 5-1.2(a)this chapter. Only trust funds that are nominal or short term shall be deposited into an IOTA account. The member shall certify annually, in writing, that the member is in compliance with, or is exempt from, the provisions of this rule.'
(3) Determination of Nominal or ShoH Tern Funds. The lawyer shall exercise good faith judgment in determining upon receipt whether the funds of a client or third person are nominal or short term. In the exercise of this good faith judgment, the lawyer shall consider such factors as:
(A) the amount of a client’s or third person’s funds to be held by the lawyer or law firm;
(B) the period of time such funds are expected to be held;
(C) the likelihood of delay in the relevant transaction(s) or. proceeding(s);
(D) the cost to the lawyer or law firm of establishing and maintaining an interest-bearing account or other appropriate investment for the benefit of the client or third person; and
(E) minimum balance requirements . and/or service charges or fees imposed by the eligible institution.
.The determination of whether a client’s or third person’s funds are nominal or short term shall rest in the sound judgment of the lawyer or law firm. No lawyer shall be charged with ethical impropriety or other breach of professional conduct based on the exercise of such good faith judgment.
(4) Notice to Foundation. Lawyers or law firms shall advise the Foundation, at Post Office Box 1553, Orlando, Florida 32802-1553, of the establishment of an IOTA account for funds covered by this rule. Such notice shall include: the IOTA account number as assigned by the eligible institution; the name of the lawyer or law firm on the IOTA account; the eligible institution name; the eligible institution address; and the name and Florida Bar attorney number of the lawyer, or of each member of The Florida Bar in a law firm, practicing from an office or other business location within the state of Florida that has established the IOTA account.
(5) Eligible Institution Participation in IOTA Participation in the IOTA program is voluntary for banks, savings and loan associations, and investment companies. Institutions that choose to offer and maintain IOTA accounts must meet the following requirements:
(A) Interest Rates and Dividends. Eligible institutions shall maintain IOTA accounts which pay the highest interest rate or dividend generally available from the institution to its non-IOTA account customers when IOTA accounts meet or exceed the same minimum balance or other account eligibility qualifications, if any.
(B) Determination of Interest Rates and Dividends. In determining the highest interest rate or dividend generally available from the institution to its non-IOTA accounts in compliance with subdivision (5)(A), above, eligible institutions may *281 consider factors, in-addition to the IOTA account balance, customarily considered by the institution when setting interest rates or dividends for its customers, provided that such factors do not discriminate between IOTA accounts and accounts of non-IOTA customers, and that these factors do not include that the account is an IOTA account.
(C) Remittance and Reporting Instructions. Eligible institutions shall:
(i) calculate and remit interest or dividends on the balance of the deposited funds, in accordance with the institution’s standard practice for non-IOTA account customers, less reasonable service charges or fees, if any, in connection with the deposited funds, at least quarterly, to the Foundation;
(ii) transmit with each remittance to the Foundation a statement showing the name of the lawyer or law firm from whose IOTA account the remittance is sent, the lawyer’s or law firm’s IOTA account number as assigned by the institution, the rate of interest applied, the period for which the remittance is made, the total interest or dividend earned during the remittance period, the amount and description of any service charges or fees assessed during the remittance period, and the net amount of interest or dividend remitted for the period; and
(ifi) transmit to the depositing lawyer or law firm, for each remittance, a statement showing the amount of interest or dividend paid to the Foundation, the rate of interest applied, and the period for which the statement is made.
(6) Small Fund Amounts. The Foundation may establish procedures for a lawyer or law firm to maintain an interest-free trust account for client and third-person funds that are nominal or short term when their nominal or short-term trust funds cannot reasonably be expected to produce or have not produced interest income net of reasonable eligible institution service charges or fees.'
(7) Confidentiality. The Foundation shall protect the confidentiality of information regarding a lawyer’s or law firm’s trust account obtained by virtue of this, rule.
(fh) Únidentifiable Trust Fund Accumulations and Trust Funds Held for Missing Owners. When an attorney’s trust account contains an unidentifiable accumulation of trust funds or property, or trust funds or property held for missing owners, such funds or property shall be so designated. Diligent search and inquiry shall then be made by the attorney to determine the beneficial owner of any unidentifiable accumulation or the address of any missing owner. If the beneficial owner of an unidentified accumulation is determined, the funds shall be properly identified as the lawyer’s trust property. If a missing beneficial owner is located, the trust funds or property shall be paid over or delivered to the beneficial owner if the owner is then entitled to receive the same. Trust funds and -property that remain unidentifiable and funds or property that are held for missing owners after being designated as such shall, after diligent search and inquiry fail to identify the beneficial owner or owner’s address, be disposed of as provided in chapter 717, Florida Statutes applicable Florida law.
(gi) Disbursement Against Uncollected Funds. A lawyer generally may not use, endanger, or encumber money held in trust for a client for purposes of carrying out the business of another client without the permission of the owner given after full disclosure of the circumstances. However, certain categories, of trust account deposits are considered to carry a limited and acceptable risk of failure so that dis *282 bursements of trust account funds may be made in reliance on such deposits without disclosure to and .permission of clients owning trust account funds subject to possibly being affected. Except for disbursements based upon any of the 6 categories of limited-risk uncollected deposits enumerated below, a lawyer may not disburse funds held for a client or on behalf of that client unless the funds held for that client are collected funds. For purposes of this provision, “collected funds” means funds deposited, finally settled, and credited to the lawyer’s trust account. Notwithstanding that a deposit made to the lawyer’s trust account has not been finally settled and credited to the account, the lawyer may disburse funds from the trust account in reliance on such deposit under any-of the following circumstances:
(1) when the deposit is made by certified check or cashier’s check;
(2) when the deposit is made by a check or draft representing loan proceeds issued by a federally or state-chartered bank, savings bank, savings and loan association, credit union, or other duly licensed or chartered institutional lender;
(3) when the deposit is made by a bank check, official check, treasurer’s check, money order, or other such instrument issued by a bank, savings and loan association, or credit union within the state of Florida' when the lawyer has reasonable and prudent grounds to believe the instrument will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
(4) when the deposit is made by a check drawn on the trust account of a lawyer licensed to practice in the state of Florida or on the escrow or trust account of a real estate broker licensed under chapter-4-75? Florida Statutes, applicable Florida law when the lawyer has a reasonable and prudent belief that the deposit will clear and constitute collected funds in the lawyer’s trust account within a reasonable period of time;
(5) when the deposit is made by a check issued by the United States, the State of Florida, or any agency or political subdivision of the State of Florida;
(6) when the deposit is made by a check or draft issued by an insurance company, title insurance company, or a licensed title insurance agency authorized to do business in the state of Florida and the lawyer has a reasonable and prudent belief that the instrument will clear and constitute collected funds in the trust account within a reasonable period of time.
A lawyer’s disbursement of funds from a trust account in reliance on deposits that are not yet collected funds in any circumstances other than those set forth above, when it results in funds of other clients being used, endangered, or encumbered without authorization, may be grounds for a finding of professional misconduct. In any event, such a disbursement is at the risk of the lawyer making the disbursement. If any of the deposits fail, the lawyer, upon obtaining knowledge of the failure, must immediately act to protect the property of the lawyer’s other clients. However, if the lawyer accepting any such check personally pays the amount of any failed deposit or secures or arranges payment from sources available to the lawyer other than trust account funds of other clients, the lawyer shall not be considered guilty of professional misconduct.
RULE 5-1.2 TRUST ACCOUNTING RECORDS AND PROCEDURES
(a) Applicability. The provisions of these rules apply to all trust funds received or disbursed by members of The Florida Bar in the course of their professional practice of law within the state of Florida as members of The Florida Bar *283 except special trust funds received or'disbursed by an attorney as guardian, personal representative, receiver, or in a similar capacity such as trustee under a specific trust document where the trust funds are maintained in a segregated special trust account and not the general trust account and wherein this special trust position has been created, approved, or sanctioned by law or an order of a court that has authority or duty to issue orders pertaining to maintenance of such special trust account. These rules shall apply to matters wherein a choice of laws analysis indicates that such matters are governed by the laws of Florida.
(b) Minimum Trust Accounting Records. The following are the minimum trust accounting records that shall be maintained:
(1) A separate bank or savings and loan association account or accounts and — if-ufi-lized, a sspar-ate-savings-and' loan association account or accounts. — Such-accounts shall be located in--the-state of Florida unless the-elient-ptherwise-directsy in writing, or unless the financial institution ■ in which -fhe-funds are maintained voluntarily submibs-to the jurisdiction of the Supreme Court-of-Florida. — Such-voluntary submission to the jurisdiction--of the Supreme Court — of—Florida shall-be on the form prescribed by the-board-of governors, of The-Florida Bar. The account or accounts shall-be in the name of the lawyer or law firm and clearly labeled and designated as a “trust account.”
(2) Original or duplicate deposit slips and, in the case of currency or coin, an additional cash receipts book, clearly identifying:
(A) the date and source of all trust funds received; and
(B) the client or matter for which the funds were received.
(B)Original canceled checks, all of which must be numbered consecutively, or, if the financial institution wherein the trust account is maintained does not return the original checks, copies thereof, as provided by the financial institution.
(4) Other documentary support for all disbursements and transfers from the trust account.
(5) A separate cash receipts and disbursements journal, including columns for receipts, disbursements, transfers, and the account balance, and containing at least:
(A) the identification of the client or matter for which the funds were received, disbursed, or transferred;
(B) the date on which all trust funds were received, disbursed, or transferred;
(C) the check number for all disbursements; and
(D) the reason for which all trust funds were received, disbursed, or transferred.
(6) A separate file or ledger with an individual card or page for each client or matter, showing all individual receipts, disbursements, or transfers and any unex-pended balance, and containing:
(A) the identification of the client or matter for which trust funds were received, disbursed, or transferred;
(B) the date on which all trust funds were'received, disbursed, or transferred;
(C) the check number for all disbursements; and
(D) the reason for which all trust funds were received, disbursed, or transferred.
(7) All. bank or savings and loan association statements for all trust accounts.
(c) Minimum Trust Accounting Procedures. The minimum trust accounting procedures that shall be followed by all *284 attorneys practicing in members of The Florida Bar (when a choice of laws analysis indicates that the laws of Florida apply) who receive or disburse trust money or property are as follows:
(1) The lawyer shall cause to be made monthly:
(A) reconciliations of all trust bank or savings and loan association accounts, disclosing the balance per bank, deposits in transit, outstanding checks identified by date and check number, and any other items necessary to reconcile the balance per bank with the balance per the checkbook and the cash receipts and disbursements journal;' and
(B) a comparison between the total of the reconciled balances of all trust accounts and the total of the trust ledger cards or pages, together with specific descriptions of any differences between the 2 totals and reasons therefor.
(2) At least annually, the lawyer shall prepare a detailed listing identifying the balance of the unexpended trust money held for each client or matter.
(3) The above reconciliations, comparisons, and listing shall be retained for at least 6 years.
(4) The lawyer or law firm shall authorize and request any bank or savings and loan association where the lawyer is a signatory on a trust account to notify Staff Counsel, The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399-2300, in the event any trust check is returned due to insufficient funds or uncollected funds, absent bank error.
(5) The lawyer shall file with The Florida Bar between June 1 and August 15 of each year a trust accounting certificate showing compliance with these rules on a form approved by the board of governors.
(d) Record Retention. A lawyer or law firm that receives and disburses client or third party funds or property shall maintain the records required by this chapter for 6 years subsequent to the final conclusion of each representation in which the trust funds or property were received.
(de) Audits. Any of the following shall be cause for The Florida Bar to order an audit'of a trust account:
(1) failure to file the trust account certificate required by rule 5 — 1.2(c)(5);
(2) return of a trust account check for insufficient funds or for uncollected funds, absent bank error;
(3) filing of a petition for creditor relief on behalf of an attorney;
(4) filing of felony charges against an attorney;
(5) adjudication of insanity or incompetence or hospitalization of the attorney under The Florida Mental Health Act;
(6) filing of a claim against the attorney with the Clients’ Security Fund;
(7) when requested by a grievance committee or the board of governors; or
(8) upon court order.
(ef) Cost of Audit. Audits conducted in any of the circumstances enumerated in subdivision -(d) abovethis rule shall be at the cost of the attorney audited only when the audit reveals that the attorney was not in substantial compliance with the trust accounting requirements. It shall be the obligation of any attorney who is being audited to produce all records and papers concerning property and funds held in trust and to provide such explanations as may be required for the audit. Records of general accounts are not required to be produced except to verify that trust money has not been deposited thereto. If it has been determined, that trust money has been deposited into a general account, all *285 of the transactions pertaining to any firm account will be subject to audit.
(fg) Failure to Comply With Subpoena.
(1) Members of the bar are under an obligation to maintain trust accounting records as required by these rules arid, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of same in these disciplinary proceedings.
(2) Notice of noncompliance with a subpoena may be filed with the Supreme Court of Florida only if a grievance committee or a referee shall first find that no good cause exists for failure to comply. A grievance committee or referee shall hear the issue of noncompliance and issue findings thereon within 30 days of the request for issuance of the notice of noncompliance.
(3) After notice is filed with the Supreme Court of Florida by The Florida Bar that a member of the bar has failed to fully comply with a properly issued subpoena directing the production of any trust accounting records that are required by these rules, unless good cause for the failure to comply is shown, the member may be suspended from the practice of law in Florida, by order of the Supreme Court of Florida, until such time as the member fully complies with the subpoena and/or until further order of the court.
(4) Any member subject to suspension under this rule may petition the court, within 10 days of the filing of the notice, to withhold entry of the order of suspension or at any time after entry of an order of suspension may petition the court to terminate or modify the order of suspension. If the court determines it necessary to refer the petition to terminate' or modify the suspension to a referee for receipt of evidence, the referee proceedings shall be conducted in the same manner as proceedings before a referee on a petition to withhold, terminate, or modify an order of emergency suspension, as elsewhere provided in these rules.
Comment
These rules shall apply to matters wherein a choice of laws analysis indicates that such matters are governed by the laws of Florida.
A lawyer must hold property of others with the care required of a professional fiduciary. This chapter requires maintenance of a bank or savings and loan association account, clearly labeled as a trust account and in which only client or third party trust funds are held.
Securities should be kept in a safe deposit box, except when some other form of safekeeping .is warranted by special circumstances.
All property that is the property of clients or third persons should be kept separate from the lawyer’s business and personal property and, if money, in 1 or more trust accounts, unless requested otherwise in writing by the client. Separate trust accounts may be warranted when administering estate money or acting in similar fiduciary capacities.
Lawyers often receive funds from third parties from which the lawyer’s fee will be paid. If there is risk that the client may divert the funds without' paying the fee, the lawyer is not required to remit the portion from which the' fee is to be paid. However, a lawyer may not hold funds to coerce a client into accepting the lawyer’s contention. The disputed portion of the funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. The undisputed portion of the funds shall be promptly distributed.
*286 Third parties, such as a client’s creditors, may have just claims against funds or other property in a lawyer’s custody. A lawyer may have a duty under applicable law to protect such third party claims against wrongful interference by the client and, accordingly, may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, and, where appropriate, the lawyer should consider the possibility of depositing the property or funds in dispute into the registry of the applicable court so that the matter may be adjudicated.
The obligations of a lawyer under this chapter are independent of those arising from activity other than rendering legal services. For example, a lawyer who serves as an escrow agent is governed by the applicable law relating to fiduciaries even though the lawyer does not render legal services in the transaction.
Each lawyer is required to be familiar with and comply with Rules Regulating Trust Accounts as adopted by the Supreme Court of Florida.
Money or other property entrusted to a lawyer for a specific purpose, including advances for fees, costs, and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of a lawyer are not subject to counterclaim or setoff for attorney’s fees, and a refusal to account for and deliver over such property upon demand shall be a conversion. This does not preclude the retention of money or other property upon which a lawyer has a valid lien for services or to preclude the payment of agreed fees from the' proceeds of transactions or collections.
Advances for fees and costs (funds against which costs and fees are billed) are the property of the client or third party paying same on a client’s behalf and are required to be maintained in trust, separate from the lawyer’s property. Retainers are not funds against which future services are billed. Retainers are funds paid to guarantee the future availability of the lawyer’s legal services and are earned by the .lawyer upon receipt. Retainers, being funds of the lawyer, may not be placed in the client’s trust account.
The test of excessiveness found elsewhere in the Rules Regulating The Florida Bar applies to all fees for legal services including retainers, nonrefundable retainers, and minimum or flat fees.
RULE 10-2.1 GENERALLY
Whenever used.in these rules the following words or terms shall have the meaning herein set forth unless the use thereof shall clearly indicate a different meaning:
(a) Unlicensed Practice of Law. The unlicensed practice of law shall mean the practice of law, as prohibited by statute, court rule, and case law of the Sstate of Florida. For purposes of this chapter^
(1) itlt shall not constitute the unlicensed practice of law for a nonlawyer to engage in limited oral communications to assist a person in the completion of blanks on a legal form approved by the Supreme Court of Florida. Oral communications by nonlawyers are restricted to those communications reasonably necessary to elicit factual information to complete the blanks on the form and inform the person how to file the form.
Except for forms filed by the petitioner in an action for an injunction for protection against domestic or repeat violence, the following language shall appear on any form completed pursuant to this rule and any individuals assisting in the completion of the form shall provide their name, business name, address, and telephone number on the form:
*287 This form was completed with the assistance of:
Name of Individual
Name of Business
Address
Telephone Number
Before a nonlawyer assists a person in the completion of a form in the manner set forth in this rule, the nonlawyer shall provide the person with a copy of a disclosure. A copy of the disclosure, signed by both the nonlawyer and the person, shall be given to the person to retain and the non-lawyer shall keep a copy in the person’s file. The disclosure does not act as or constitute a waiver, disclaimer, or limitation of liability. The disclosure shall contain the following provisions:
(Name) told me that he/she is not a lawyer and may not give legal advice or represent me in court.
(Name) told me that he/she may only help me fill out a form approved by the Supreme Court of Florida. (Name) may only help me by asking me factual questions to fill in the blanks on the form. (Name) may also tell me how to file the form.
(Name) told me that , he/she is not a lawyer and cannot tell me what my rights or remedies are or how to testify in court.
_ I can read English
— I cannot read English but this notice was read to me by (Name) in (Language) which I understand.
(2) It shall constitute the unlicensed practice of law for a person who does not meet the definition of paralegal or legal assistant as set forth elsewhere in these rules to offer or provide legal services directly to the public or for a person who does not meet the definition of paralegal or legal assistant as set forth elsewhere in these rules to use the title paralegal, legal assistant, or other similar term in providing legal services or legal forms preparation services directly to the public.
(3) It shall constitute the unlicensed practice of law for a lawyer admitted in a state other than Florida to advertise to provide legal services in Florida which the lawyer is not authorized to provide.
(b) Paralegal or Legal Assistant. A paralegal or legal assistant is a person qualified by education, training, or work experience, who works under the supervision of a member of The Florida Bar and who performs specifically delegated substantive legal work for which a member of The Florida Bar is responsible. A nonlaw-yer or a group of nonlawyers may not offer legal services directly to the public by employing a lawyer to provide the lawyer supervision required under this rule.
(be) Nonlawyer or Nonattorney. For purposes of this chapter, a nonlawyer or nonattorney is an individual who is not a member of The Florida Bar. This includes, but is not limited to, lawyers admitted in other jurisdictions, law students, law graduates, applicants to The Florida Bar, disbarred lawyers, and suspended lawyers during the period of suspension lawyers who have resigned from The Florida Bar. A suspended lawyer, while a member of The Florida Bar during the period of suspension as provided elsewhere in these rules, does not have the privilege of practicing law in Florida during the period of suspension.
(ed) This Court or the Court. This court or the court shall mean the Supreme Court of Florida.
(de) Bar Counsel. Bar counsel is a member- of The Florida Bar representing The Florida Bar in any proceeding under these rules. Any — unlicensed practice of law staff-counsel - of The Florida-Bar-may *288 serve as bar counsel or assistant bar counsel- in a particular-easfe-
(ef) Respondent. A respondent is a nonlawyer who is accused of engaging in the unlicensed practice of law or whose conduct .is under investigation.
(fg) Referee. A referee is the judge or retired judge appointed to conduct proceedings as provided under these rules.
(gh) Standing Committee. The standing committee is the committee constituted according to the directives contained in these rules.
(hi) Circuit Committee. A circuit committee is a local unlicensed practice of law circuit committee.
(ij) UPL Staff Counsel. UPL staff counsel is the director of the unlicensed practice of law department and an employee of The Florida Bar employed to perform such duties, as may be assigned, under the direction of the executive director. When used in this rule, the term may include assistant U-P-L-staff counseb
(jk) UPL. UPL is the unlicensed practice of law.
(ki) The Board or Board of Governors. The board or board of governors is the board of governors of The Florida Bar.
(im) Designated Reviewer. The designated reviewer is a member of the board of governors responsible for review and other specific duties as assigned by the board of governors with respect to a particular circuit committee or matter. If a designated reviewer recuses or is unavailable, any other board member may serve as designated reviewer in that matter. The designated reviewer will be selected, from time to time, by the board members from the circuit of such circuit committee. If circuits have an unequal number of circuit committees and board members, review responsibility will be reassigned, from time to time, to equalize workloads. On such reassignments responsibility for all pending cases from a particular committee passes to the new designated reviewer. UPL staff counsel will be given .written notice of changes in the designated reviewing members for a particular committee.
(mn) Executive Committee. The executive committee is the executive committee of the board of governors of The Florida Bar. All acts and discretion required by the board under these rules may be exercised by its executive committee between meetings of the board as may from time to time be authorized by standing policies of the board of governors.
RULE 10-3.2 DUTIES OF THE STANDING COMMITTEE
It shall be the duty of the standing committee to receive and evaluate circuit committee reports and to determine whether litigation should be instituted in the court against any alleged offender. The standing committee may approve civil injunctive proceedings, indirect criminal contempt proceedings, or a combination of both, or such other action as may be appropriate. In addition, the duties of the standing committee shall include, but not be limited to:
(a) the consideration and investigation of activities that may, or do, constitute the unlicensed practice of law and exercising final authority to close cases not deemed by the standing committee to then warrant further action by The Florida Bar for unlicensed practice of law;
(b) the supervision of the circuit committees, which shall include, but not be limited to:
(1) prescribing rules of procedure for circuit committees;
(2) assigning reports of unlicensed practice of law for investigation;
*289 (3) reassigning or withdrawing matters previously assigned;
(4) exercising final authority to close cases where UPL staff counsel or bar counsel objects to the closing of the case by the circuit committee;
(5) exercising final authority to accept a cease and desist affidavit in cases proposed to be resolved by cease and desist affidavit where UPL staff counsel or bar counsel objects to the acceptance of a cease and desist affidavit; and
(6) exercising final authority to accept a cease and desist affidavit and monetary penalty in cases proposed by the circuit committee to be resolved by a cease and desist affidavit that includes a monetary penalty not to exceed $500 per incident;
(7) joining with a circuit committee in a particular investigation;
(8) assigning staff investigators, UPL staff counsel, and voluntary bar counsel to conduct investigations on behalf of or in concert with the circuit committees; and
(9) suspending circuit committee members and chairs for cause and appointing a temporary circuit committee chair where there has been a suspension, resignation, or removal, pending the appointment of a permanent chair by the board of governors;
(c) the initiation and supervision of litigation, including the delegation of responsibility to UPL staff counsely assistant -UP-L-staff counsel, br-anch UPL counsel, or bar counsel to prosecute such litigation;
(d) the giving of advice regarding the unlicensed practice of law policy to the officers, board of governors, staff, sections, or committees of The Florida Bar as requested; and
(e) furnishing any and all information, confidential records, and files regarding pending or closed investigations of unlicensed practice of law to any state or federal law enforcement or regulatory agency, United States Attorney, state attorney, the Florida Board of Bar Examiners and equivalent entities in other jurisdictions, and Florida bar grievance committees and equivalent entities in other jurisdictions where there is or may be a violation of state or federal law or the Rules of Professional Conduct of The Florida Bar.
RULE 10-3.3 APPOINTMENT AND EMPLOYMENT OF STAFF UPL COUNSEL AND BAR COUNSEL
The board of governors shall employ 1 or-more UPL staff counsel, bar counsel, and other necessary employees, including investigators, to assist the standing committee to carry out its responsibilities as prescribed elsewhere in these rules. The board of governors UPL counsel may appoint bar counsel to prosecute the cause before the referee.
RULE 10-4.1 GENERALLY
(a) Appointment and Terms. Each circuit committee shall be appointed by the court on advice of the board of governors and shall consist of not fewer than 3 members, at least one-third of whom shall be nonlawyers. All appointees shall be residents of the circuit or have their principal office in the circuit. The terms of the members of circuit committees shall be for 1 year from the date of appointment by the court or until such time as their successors are appointed and qualified. Continuous service of a member shall not exceed 3 years. A member shall not be reappointed for a period of 3 years after the end of the member’s third term provided, however, the expiration of the term of any member shall not disqualify that member from concluding any investigations pending before that member. Any member of a circuit committee may be removed from office by the board of governors.
*290 (b) Committee Chair. For each circuit committee there shall be a chair designated by the board of governors. A vice-chair and secretary may be designated by the chair of each circuit committee. The chair shall be a member of-The Florida Bar.
' (c) Quorum. Three members of the circuit committee or a majority of the members, whichever is less, shall constitute a quorum.
(d) Panels. The circuit committee may be divided into panels of not fewer than 3 members, 1 of whom must be a nonlawyer. Division of the circuit committee into panels shall only be upon concurrence of the designated reviewer and the chair of the circuit committee, The 3 member panel shall elect 1 of its members to preside over the panel’s actions. If the chair or vice-chair of the circuit committee is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(e) Duties. It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompt report of its investigation and findings to -UPL-staffbar counsel. In addition, the duties of the circuit committee shall include, but not be limited to:
(1) exercising final authority to close cases not deemed by the circuit committee to warrant further action by The Florida Bar except those cases to which UPL staff counsel objects to the closing of the case;
(2) exercising final authority to close cases proposed to be resolved by cease and desist affidavit except those cases to which UPL staff counsel, objects to the acceptance of a cease and desist affidavit;
(3) forwarding to ■UPL-staffbar counsel for review by the standing committee recommendations for closing cases by a cease and desist affidavit that includes a monetary penalty not to exceed- $500 per incident; and
(4)forwarding to UPL staff counsel recommendations for litigation to be reviewed by the standing committee.
(f)Circuit Committee Meetings. Circuit committees should meet at regularly scheduled times, not léss frequently than quarterly each year. Either the chair or vice chair may call special meetings. Circuit committees should meet at least monthly during any period when the committee has 1 or more pending cases assigned for investigation and report. The time, date and place of regular monthly meetings should be. set in advance by agreement between each committee and UPL staffbar counsel. .
RULE 10-5.1 COMPLAINT PROCESSING
(a) Complaints. All complaints alleging unlicensed practice of law, except those initiated by The Florida Bar, shall be in writing and signed by the complainant. The complaint shall contain a statement providing that:
Under penalties of perjury, I declare that I have read the foregoing document and that to the best of my knowledge and belief the facts stated in it are true.
(b) Review by UPL-StaffBar Counsel. UPL — staffBar counsel shall review the complaint and determine whether the alleged conduct, if proven, would constitute a violation of the prohibition against engaging in the unlicensed practice of law. UPL staffBar counsel may conduct a preliminary, informal investigation to aid in this determination and, if necessary, may employ a Florida bar staff investigator to aid in the preliminary investigation. If UPL staffbar counsel determines that the facts, if proven, would not constitute a violation, UPL-staffbar counsel may decline to pursue the complaint. A decision by *291 UPL staffbar'counsel not to pursue a complaint shall not preclude further action or review under the Rules Regulating The Florida Bar. The complainant shall be notified of a decision not to pursue a complaint and shall be given the reasons therefor.
(c) Referral to Circuit Committee. UPL staffBar counsel may refer a UPL file to the appropriate circuit committee for further investigation or action as authorized elsewhere in these rules.
(d) Closing by UPL Staff Bar Counsel and Committee Chair. If UPL staffbar counsel and a circuit committee chair concur in a finding that the case should be closed without a finding of unlicensed practice of law, the coihplaint may be closed on such finding without reference to the circuit committee or standing committee.
(e) Referral to UPL StaffBar Counsel for Opening. A complaint received by a circuit committee or standing committee member directly fr.om a complainant shall be reported to UPL staffbar counsel for docketing and assignment of a case number. Should the circuit committee or standing committee 'member decide that the facts, if proven, would not constitute a violation of the unlicensed practice of law, the circuit committee or standing committee member shall forward this finding to UPL staffbar counsel along with the complaint for notification to the complainant as outlined above. Formal investigation by a circuit committee may proceed after the matter has been referred to UP-L-staffbar counsel for docketing.
RULE 10-6.1 HEARINGS
(a) Conduct of Proceedings. The proceedings of circuit committees and the standing committee when héarings are held may be informal in nature and the committees shall not be bound by the rules of evidence.
(b) Taking Testimony. UPL staffBar counsel, the standing committee, each circuit committee, and members thereof conducting investigations are empowered to take and have transcribed the testimony and evidence of witnesses. If the testimony is recorded stenographically or otherwise, the witness shall be sworn by any person authorized by law to administer oaths.
(c) Rights and Responsibilities of Respondent. The respondent may be required to appear and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel.
(d) Rights of Complaining Witness. The complaining witness is not a party to the investigative proceeding although the complainant may be called as a witness should the matter come before a judge or a referee. The complainant may be granted the right to be present at any circuit committee hearing when the respondent is present before the committee. The complaining witness shall have no right to appeal the finding of the circuit committee.
RULE 10-6.2 SUBPOENAS
(a) Issuance by Court. Upon receiving a written application of the chair of the standing committee or of a circuit committee or UPL staffbar counsel alleging facts indicating that a person or entity is or may be practicing law without a license arid that the‘issuance of a subpoena is necessary for the investigation of such unlicensed practice, the clerk of the circuit court in which the committee is located or the clerk of the Supreme Court of Florida shall issue subpoenas in the name, respectively, of the chief judge of the circuit or the chief justice for the attendance of any person and production of books and records before counsel or the investigating *292 circuit committee or any member thereof at the time and place within its circuit designated in such application. Such subpoenas shall be returnable to the circuit court of the residence or place of business of the person subpoenaed. A like subpoena shall issue upon application by any person or entity under investigation.
(b) Failure to Comply. Failure to comply with any subpoena shall constitute a contempt of court and may be punished by the Supreme Court of Florida or by the circuit court of the circuit to which the subpoena is returnable or where the con-temnor may be found. The circuit court to which the subpoena is returnable shall have power to enter such orders as may be necessary for the enforcement of the subpoena.
RULE 10-6.3 RECOMMENDATIONS AND DISPOSITION OF COMPLAINTS
(a) Circuit Committee Action. Upon concluding its investigation, the circuit committee shall forward a report to UPL staffbar counsel regarding the disposition of those cases closed, those cases where a cease and desist affidavit has been accepted, those cases where a cease and desist affidavit with monetary penalty has been recommended, and those cases where litigation is recommended. A majority of those present is required for all circuit committee recommendations; however, the vote may be taken by mail or telephone rather than at a formal meeting. All recommendations for a cease and desist affidavit with monetary penalty shall be reviewed by the standing committee for final approval. All recommendations for litigation under these rules shall be reviewed by the standing committee and a designated reviewer for final approval prior to initiating litigation.
(b) Action by UPL StaffBar Counsel. -UPL-staffBar counsel shall review the disposition reports of the circuit committee. If UPL — staffbar counsel objects to any action taken by the circuit committee, UPL staffbar counsel shall forward such objection to the circuit committee within 10 days of receipt of the circuit committee report. UPL staffBar counsel shall place the action and objection before the standing committee for review at its next scheduled meeting. The standing committee shall review the circuit committee action and the objection, and shall vote on the final disposition of the case. Once a case is closed or a cease and desist affidavit is accepted by the circuit committee or by the standing committee, UPL — staffbar counsel shall inform the complainant and, if contacted, the respondent of the disposition of the complaint.
(c) Review by Designated Reviewer. A designated reviewer shall review recommendations by the standing committee that litigation be initiated. If the designated reviewer disagrees with the recommendation for litigation, the designated reviewer shall make a report and recommendation to the board of governors. The designated reviewer shall make the report and recommendation within 21 days following the mailing date of the notice of standing committee action, otherwise the standing committee action shall become final.
RULE 10-7.1 PROCEEDINGS FOR INJUNCTIVE RELIEF
(a) Filing Complaints. Complaints for civil injunctive relief shall be by petition filed in the Supreme Court of Florida by The Florida Bar in its name.
(b) Petitions for Injunctive Relief. Each such petition shall be processed in the Supreme Court of Florida in accordance with the following procedure:
(1) The petition shall not be framed in technical language but shall with reason *293 able clarity set forth the facts constituting the unlicensed practice of law. A demand for relief may be included in the petition but shall not be required.
(2) The court, upon consideration of any petition so filed, may issue its order to show cause directed to the respondent commanding the respondent to show cause, if there be any, why the respondent should not be enjoined from the unlicensed practice of law alleged, and further requiring the respondent to file with the court and serve upon UPL staffbar counsel within 20 days after service on the respondent of the petition and order to show cause a written answer admitting or denying each of the matters set forth in the petition. The legal sufficiency of the petition may, at the option of the respondent, be raised by motion to dismiss filed prior to or at the time of the filing of the answer. The fifing of a motion to dismiss prior to the fifing of an answer shall postpone the time for the fifing of an answer until 10 days after disposition of the motion. The order and petition shall be served upon the respondent in the manner provided for service of process by Florida Rule of Civil Procedure 1.070(b). Service of all other pleadings shall be governed by the provisions of Florida Rule of Civil Procedure 1.080. '
(3) Any party may request oral argument upon any question of law raised by the initial pleadings. The court may, in its discretion, set the matter for oral argument upon the next convenient motion day or at such time as it deems appropriate.
(4) If no response or defense is filed within the time permitted, the allegations of the petition shall be taken as true for purposes of that action. The court will then, upon its motion or upon motion of any party, decide the case upon its merits, granting such relief and issuing such order as might be appropriate; or it may refer the petition for further proceedings’ according to rule 10 — 7.1(b)(6).
(5) If a response or defense filed by a respondent raises no issue of material fact, any party, upon motion, may request summary judgment and the court may rule thereon as a matter of law.
(6) The court may, upon its motion or upon motion of any party, enter a judgment on the pleadings or refer questions of fact to a referee for determination.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) The proceedings shall be held in the county where the respondent resides or where the alleged offense was committed, whichever shall, be designated, by the court. •
(2) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with .any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(3) The Florida. Rules of Civil Procedure, including those provisions pertaining to discovery, not inconsistent with these rules shall apply in injunctive proceedings before the referee. The powers and jurisdiction generally reposed in the court under those rules may in this action be exercised by the referee. The Florida Bar may in every case amend its petition 1 time as of right, within 60 days after the fifing of the order referring the matter to a referee.
(4) Review of interlocutory rulings of the referee may be had by petition to the court filed within 30 days after entry of the *294 ruling complained of. A supporting brief or memorandum of law and a transcript containing conformed copies of pertinent portions of the record in the form of an appendix shall be filed with the court by a party seeking such review. Any opposing party may file a responsive brief or memorandum of law and appendix containing any additional portions of the record deemed pertinent to the issues raised within 10 days thereafter. The petitioner may file a reply brief or memorandum of law within 5 days of the date of service of the opposing party’s responsive brief or memorandum of law. Any party may request oral argument at the' time that party’s brief or memorandum of law is filed or due. Interlocutory review hereunder shall not stay the cause before the referee unless the referee or the court on its motion or on motion of any party shall so order.
(d) Referee’s Report.
(1) At the conclusion of the hearing, the referee shall file a written report with the court stating findings of fact, conclusions of law, a statement of costs incurred and' recommendations as to the manner in which costs should be taxed as provided in rule 10 — 7.1(d)(2), and a recommendation for final disposition of the cause which may include the imposition of a civil penalty not to exceed $1000 per incident. The original record shall be filed with the report. Copies of the referee’s report shall be served upon all parties by the referee at the time it is filed with the court.
(2) The referee shall have discretion to recommend the assessment of costs. Taxable costs of the proceeding shall include only:
(A) investigative costs;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee; and
(H) any other costs which may properly be taxed in civil litigation.
(3)Should the parties enter into a stipulated injunction prior to the hearing, the stipulation shall be filed with the referee. The referee may approve the stipulation or reject the stipulation and schedule a hearing as prorided elsewhere in these rules. If accepted, the stipulation and original record shall then be filed with the court for final approval of the stipulation and entry of an injunction. A written report as described in rulé 10 — 7.1(d)(1) shall be filed by the referee along with the stipulation.
(e) Review by the Supreme Court of Florida.
(1) Objections to the report of the referee shall, be filed with the court by any party aggrieved, within 30 days after the filing of the report. If the objector desires, a brief or memorandum of law in support of the objections may be filed at the time the objections are filed. Any other party may file a responsive brief or memorandum of law within 20 days of service of the objector’s brief or memorandum of law. The objector may file a reply brief or memorandum of law within 10 days of service of the opposing party’s responsive brief or memorandum of law. Oral argument will be allowed at the court’s discretion and will be governed by the provisions of the Florida Rules of Appellate Procedure.
(2) Upon the expiration of the time to file objections to the referee’s report, the court shall review the report of the referee, together with any briefs or memoranda of law or objections filed in support of or *295 opposition to such report. After review, the court shall determine as a matter of law whether the respondent has engaged in the unlicensed practice of law, whether the respondent’s activities should be enjoined by appropriate order, whether costs should be awarded, and whether further relief shall be granted.
(f) Issuance of Preliminary or Temporary Injunction. Nothing set forth in this rule shall be construed to limit the authority of the court, upon proper application, to issue a preliminary or temporary injunction, or at any stage of the proceedings to enter any such order as the court deems proper when public harm or the possibility thereof is made apparent to the court, in order that such harm may be summarily prevented or speedily enjoined.
RULE 10-8.1 FILES
(a) Files Are Property of Bar. All matters, including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those unlicensed practice of law matters conducted in county or circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information that is part of the UPL record as defined in these rules.
(b) UPL Record. The UPL record shall consist of the record before a circuit committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, and recordings and transcripts of hearings furnished to, served on, or received from the respondent or the complainant. The record before the circuit committee shall consist of all reports, correspondence, papers, and recordings furnished to or received from the respondent and the transcript of circuit committee meetings or hearings, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private. session to debate the issues inyolved and to reach a decision as to the action to be taken. The record before a refereé and the record' before the Supreme Court of Florida shall include all items properly filed in the cause including pleadings, transcripts of testimony, exhibits in evidence, and the report of the referee.
(c) Limitations on Disclosure. Any material provided to or -promulgated by The Florida Bar that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the UPL record, that portion of the UPL record may be sealed by the circuit committee chair, the referee, or the court.
(d) Disclosure of Information. Unless otherwise ordered by this court or the referee in proceedings under this rule, nothing in these rules shall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on or provided to those persons.
(e) Response to Inquiry. Representatives of The Florida Bar, authorized by the board of governors, shall reply to inquiries regarding a pending or closed unlicensed practice of law investigation as follows:
(1) Cases Opened Prior To November 1, 1992. Cases opened prior to November 1, 1992, shall remain confidential.
(2) Cases Opened On or After November 1, 1992. In any case opened on or after November 1, 1992, the fact that an unli *296 censed practice of law investigation is pending and the status of the investigation shall be public information; however, the UPL record shall remain confidential except as provided in rule 10 — 8.1(e)(4).
(3) Recommendations of Circuit Committee. The recommendation of the circuit committee as to the disposition of an investigation opened on or after November 1, 1992, shall be public information; however, the UPL record shall remain confidential except as provided in rule 10 — 8.1(e)(4).
(4) Final Action by Circuit Committee, Standing Committee and U-RL-StaffBar Counsel. The final action on investigations opened on or after November 1,1992, shall be public information. The UPL record in cases opened on or after November 1, 1992, that are closed by the circuit committee, the standing committee, or UPL staffbar counsel as provided elsewhere in these rules, cases where a cease and desist affidavit has been accepted, and cases where a litigation recommendation has been approved shall be public information and may be provided upon specific inquiry except that information that remains confidential under rule 10-8.1(c). The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(f) Production of UPL Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the UPL record even if otherwise deemed confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(g) Notice to Judges. Any judge of a court of record may be advised as to the status of a confidential unlicensed practice of law case and may be provided with a copy of the UPL record. The judge shall maintain the confidentiality of the matter.
(h) Response to False or Misleading Statements. If public statements that are false and misleading are made about any UPL case, The Florida Bar may make any disclosure necessary to correct such false or misleading statements.
(i) Providing Otherwise Confidential Material. Nothing contained herein shall prohibit The Florida Bar from providing otherwise confidential material as provided in rule 10-3.2(e).
RULE 15-1.1 PURPOSE
The Florida Bar, as an official arm of the Supreme Court of Florida, is charged with the duty of enforcing the rules governing lawyer advertising and solicitation and with assisting members of Thé Florida Bar to advertise their services in a manner beneficial to both the public and the legal profession. The board of governors, pursuant to the authority vested in it under rule 2-8.3, shall create a standing committee on advertising to advise members of The Florida Bar on permissible advertising and solicitation practices. It shall be the duty of the committee to administer the advertising evaluation program set forth in rule 4-£5subchapter 4-7.
RULE 17-1.3 ACTIVITIES
(a) Authorized Activities. An authorized house counsel, as -an employee of a business organization, may provide legal services in the state of Florida to the business organization for which a registration pursuant to rule 17-1.4 is effective, provided, however, that such activities shall be limited to:
(1) the giving of legal advice to the directors, officers, employees, and agents of the business organization with respect to its business and affairs;
(2) negotiating and documenting all matters for the business organization; and-
*297 (3) representation of the business organization in its dealings with any administrative agency or commission having jurisdiction; provided however, authorized house counsel shall not be permitted to make appearances as counsel in any court, administrative tribunal, agency, or commission situated in the state of Florida unless the rules governing such court or body shall otherwise authorize, or the attorney is specially admitted by such court or body in a case.
(b) Disclosure. Authorized house counsel, in undertaking legal services permitted pursuant to subdivision IT — 1.3(a)(2) or (3), shall disclose their capacity by written or printed communication that shall evidence both the name for the appropriate business organization and the title or function of the authorized house counsel and whether or sotthat they are not licensed to practice in the state of Florida. Such communication shall be transmitted in such manner as reasonably contemplated to create an awareness of the authorized house counsel’s status with respect to the relevant activity. In performing activities under this subdivision, authorized house counsel shall not represent themselves to be members of The Florida Bar licensed to practice law in this state.
(c) Limitation on Representation. In no event shall the activities permitted hereunder include the individual or personal representation of any shareholder, owner, partner, officer, employee, servant, or agent in any matter or transaction or the giving of advice therefor unless otherwise permitted or authorized by law, code, or rule or as may be permitted by subdivision IT — 1.3(a).
(d) Opinions to Third Parties. An authorized house counsel shall not express or render a legal judgment or opinion to be relied upon by any person or party other than in the course of the authorized house counsel’s representation of the business organization in which the authorized house counsel is employed.